[No. A028865. First Dist., Div. Five. Feb. 21, 1986.]

Estate of THOMAS J. TWOHIG, Deceased.
RILEY THOMAS TWOHIG, as Executor, etc.,
Petitioner and Respondent, v.
JAMES THOMAS SWEENEY et al., Objectors and Appellants;
SALLY WARRINGTON et al., Claimants and Respondents.

## COUNSEL

Craig W. Brunet and Thompson & Hubbard for Objectors and Appellants.

Arthur Kaufmann and Steve A. Slatkow for Petitioner and Respondent and for Claimants and Respondents.

## OPINION

**HANING, J.**—Objectors/appellants James Thomas Sweeney and Susan Lorraine Sweeney Jansen appeal an order admitting to probate the unsigned codicil to the will of Thomas J. Twohig. They contend the codicil was neither valid on its face nor integrated with decedent's formal will. We agree and reverse.

Decedent, an attorney, had four children from his first marriage: Riley, Clare, Sarah, and Brian. This marriage ended in 1958 with the death of his wife. In 1968 he married Lorraine June Twohig, who had two children, appellants herein, from a prior marriage. Appellants lived with their mother and decedent in decedent's house. Decedent and Lorraine had no children of their own.

On August 15, 1973, decedent executed a formal will. Pursuant to paragraph 4 thereof, he left his entire estate to Lorraine. In the event she failed to survive him, he left it, in equal shares, to his four natural children and his two stepchildren. His will named Lorraine as executrix, and in the event she predeceased him, his brother Edward as alternate. Lorraine died October 22, 1982, thereby predeceasing decedent.

In December 1983, while decedent was ill, his son Brian, who lived with him, looked through his father's desk in order to gather and organize important papers. In a drawer he found an envelope with the word "Will" printed on it; typed underneath were the words "of Thomas Joseph Twohig." Upon breaking the transparent tape sealing the envelope, Brian found the above-described will. Folded inside it was a handwritten document entitled "Codicil to This Will Dated August 15, 1973." In its entirety it read:

"I am of sound and disposing mind and memory.

"My wife Lorraine June Twohig died on October 22, 1982.

"I hereby make a new paragraph Fourth cancelling and voiding the old section. I now wish my will to state

"Fourth

"I give my property in equal shares to my four children Riley Thomas Twohig, Sarah (Sally Warrington, Brian Twohig and Clare M. Twohig, share and share alike.

"I also make a new paragraph fifth

"I hereby designate Riley Thomas Twohig to serve as executor without bond.

"signed January 14, 1983 at Carmel Valley California"

It is undisputed that the codicil is in decedent's handwriting.

Decedent died January 25, 1984, without signing the codicil. Riley filed a petition with the superior court requesting that the will and codicil be admitted to probate and that he be granted authority to administer the estate under the Independent Administration of Estates Act. (Prob. Code, § 591 et seq.) His brother Brian nominated him to act as executor the same day. Edward Twohig filed a declination to act and renunciation of right to letters testamentary; the will and codicil were admitted to probate.

■ Where, as here, there is no extrinsic evidence and no conflict in the evidence, "an appellate court is not bound by a construction of a document based solely upon the terms of the written instrument . . . . Therefore, the validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law." (*Estate of Wunderle* (1947) 30 Cal.2d 274, 280 [181 P.2d 874]; see also *Estate of Baker* (1963) 59 Cal.2d 680, 683 [31 Cal.Rptr. 33, 381 P.2d 913].) ■ "The policy of the law is toward 'a construction favoring validity, in determining whether a will has been executed *in conformity with statutory requirements.*' [Citation.]" (*Estate of Baker, supra,* at p. 683, italics ours.) ■ *Estate of Mangeri* (1976) 55 Cal.App.3d 76 [127 Cal.Rptr. 438] noted the above and other cases and observed that while there is a trend toward liberality in construing statutes governing holographic wills, "[s]trict compliance with the code requirements as to handwriting, date and signature remains essential. [Citation.] ■ [¶] . . . 'Statutory requirements must be strictly followed in the execution of a will, and the testator's intention is not to be considered in determining whether such requirements have been met. [Citation.]' [Citation.] [¶] Even rules of liberal construction do not permit us to ignore clear and explicit statutory requirements . . . . The question whether a will was executed in conformity with statutory requirements must be determined by reference to what the statutes themselves require. It is not enough to say that the procedures actually followed, while not in accordance with those requirements, were arguably good." (*Id.,* at pp. 82-83.)[1]

Probate Code section 50, subdivision (1), requires that a will "must be subscribed at the end thereof by the testator himself . . . ."[2] Section 53, subdivision (a) states: "A will which does not comply with Section 50 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator." ■ Read together, these statutes make it clear that a will, whether witnessed or holographic, requires a signature for validity. ■ As used in the statutes, will includes codicil. (Prob. Code, § 53, subd. (c).) ■ In *Estate of Wunderle, supra,* 30 Cal.2d 274, decedent had not dated the purported holographic will. It was held invalid because "[a]lthough the tendency of both the courts and the Legislature has been toward greater liberality in accepting

---

[1]Respondents urge that the preparation and placement of the codicil indicate decedent's intent that disposition of his estate be governed thereby. Appellants argue that it is just as likely that his failure to sign it, especially since he was an attorney, indicates he had not made a final decision. To adopt either premise would be entirely speculative. The result is more appropriately obtained by the application of clear legislative requirements.

[2]Section 50 of the Probate Code, as well as the other sections referred to in this opinion, was repealed by Statutes 1983, chapter 842. Pursuant to current Probate Code section 6103, the repealed sections continue to apply to estates of decedents who died before January 1, 1985. Therefore, unless otherwise noted, all further statutory references shall be to the statutes in effect at the time of decedent's death in 1984.

a writing as an holographic will [citation], this tendency 'has never been stretched to excuse *lack of substantial compliance* with the statutory requirement that a holographic will must be dated by the testator.' [Citation.]" (*Id.*, at p. 280.) Given the statutory requirement of a signature, the same rule applicable to dates necessarily applies to signatures. In *Estate of Black* (1982) 30 Cal.3d 880 [181 Cal.Rptr. 222, 641 P.2d 754], the Supreme Court held that a holographic will handwritten on three pages of a partially preprinted stationer's form should be allowed for probate despite not being completely in the testator's hand, because the incorporated printed material was neither material in substance nor essential to the holograph's validity as a testamentary disposition. The Supreme Court made it clear, however, that it could not have given this liberal reading to the will if the will had not fully satisfied the requirements of section 53, i.e., that it be written, dated, and signed. "No sound purpose or policy is served by invalidating a holograph where every statutorily required element of the will is concededly expressed in the testatrix' own handwriting and where her testamentary intent is clearly revealed in the words as she wrote them." (*Id.*, at p. 888.) While the courts have been liberal with regard to the form and location of the signature within the holograph (see, e.g., *Estate of Bloch* (1952) 39 Cal.2d 570, 572-573 [248 P.2d 21]; *Estate of Morris* (1969) 268 Cal.App.2d 638, 640 [74 Cal.Rptr. 32]), they have not condoned its absence.

Respondents contend the codicil may be incorporated by reference because it refers to "This Will dated August 15, 1973" in the heading or may be deemed integrated with the properly signed formal will because it was folded inside it. ■ Incorporation by reference occurs when "one writing, which is a complete testamentary instrument in itself, must refer to another document in such a manner as to incorporate it." (*Estate of McCarty* (1962) 211 Cal.App.2d 23, 27 [27 Cal.Rptr. 94]; see also *Estate of Wunderle, supra,* 30 Cal.2d at p. 281; current Prob. Code, § 6130.) Respondent suggests that the unsigned codicil may incorporate the signature on the formal will, thereby breathing life into the codicil itself. ■ ■ However, wills cannot, by definition, incorporate future codicils, and this codicil cannot incorporate the formal will by reference because it is not itself a "complete testamentary instrument"; it lacks a signature.

■ Integration, as opposed to incorporation by reference, occurs "when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. [Citations.] Thus several writings, connected by sequence of thought [citations], folded together [citation], or physically forming one document [citations], have been admitted to probate as constituting an holographic will." (*Estate of Wunderle, supra,* 30 Cal.2d at p. 281.) ■ A review of the

case law indicates that for several writings to be deemed integrated, they must all be holographic. "Under the doctrine of integration, two or more *handwritten* documents which do not refer to one another may be admitted to probate when it is clear that the testator intended them to be his will." (*Estate of Phippen* (1965) 238 Cal.App.2d 241, 248 [47 Cal.Rptr. 648], italics ours; see also *Estate of Wunderle, supra; Estate of Dumas* (1949) 34 Cal.2d 406 [210 P.2d 697]; *Estate of Merryfield* (1914) 167 Cal. 729 [141 P. 259]; *Estate of Callahan* (1965) 237 Cal.App.2d 818 [47 Cal.Rptr. 220]; *Estate of Blain* (1956) 140 Cal.App.2d 917 [295 P.2d 898]; *Estate of Moody* (1953) 118 Cal.App.2d 300 [257 P.2d 709]; *Estate of Fritz* (1951) 102 Cal.App.2d 385 [227 P.2d 539]; Bird, *Sleight of Handwriting: The Holographic Will in California* (1981) 32 Hastings L.J. 605, 626.) ■ However, integration may not be utilized to alter the distributive portion of a valid will by way of an invalid codicil.

Respondents cite *Estate of McCarty, supra,* 211 Cal.App.2d 23 to support probate of the unsigned codicil. In *McCarty* decedent executed a typewritten, witnessed will on April 16, 1957. Found in the same envelope after her death was an unsigned handwritten document dated July 23, 1959, leaving various bequests. The typewritten will contained notations in decedent's handwriting. At the top, in one color ink, were the words: "This has been changed May 26, 1958, Copy adtechet [*sic*] to this," and the testator's signature, underlined once. In a different color ink were the words, "Have changes [*sic*] this last will July 23, 1959"; "Have changed this will July 23—1959 my own handwritten will adtechet [*sic*]." The signature was underlined again in the second color ink and the phrase, "This will has been changed May 26, 1958" was struck out with the second color ink. The unsigned codicil was also in the second color ink. The appellate court acknowledged that neither the notations nor the codicil standing alone met the requirements of Probate Code section 53: the codicil because it was not signed and the notations because they were not testamentary. It nevertheless concluded that because the writing on the face of the will expressly referred to a handwritten codicil already in existence ("*have* changed this will" is past tense) and because the codicil and the notations bear the same date and are "clearly the product of one continuous sequence of thought. . . . we do not doubt that the testatrix intended to adopt her 1958 signature for the purpose of executing the handwritten codicil." (*Id.,* at p. 29.) Here, however, there are no holographic markings on the formal will to indicate the testator's intention to adopt his signature on that document as execution of an existing holographic codicil. To the contrary, the documents were clearly prepared at different times.

■ Finally, whether the integration or incorporation doctrines are used, it is clear that the final document, either physically or chronologically, must bear a signature.

"The rights of inheritance and testamentary disposition are wholly statutory and subject to legislative control to any extent, and the Legislature may even abolish the rights altogether." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 3, pp. 5522-5523.) The Legislature has required that wills and codicils be signed. It is a simple requirement and one that is easily understood. It is not for the courts to alter a clear statute which is within the Legislature's prerogative to enact.

That portion of the order admitting the codicil to probate is reversed.

Low, P. J., and King, J., concurred.