[No. A047527. First Dist., Div. One. Nov. 16, 1990.]

Estate of FRED SOLA, Deceased.
ANTHONY T. SOLA, Petitioner and Appellant, v.
ANNA MARIE SOLA et al., Contestants and Respondents.

242

**COUNSEL**

Franklin J. Flocks, Paolini & Paolini and Mario Paolini for Petitioner and Appellant.

Douglas J. Gray for Contestants and Respondents.

## Opinion

**STEIN, J.**—The Superior Court of San Mateo County denied the petition of Anthony T. Sola (Anthony) for probate of a purported holographic will (the purported will) of his brother Fred and ordered a prior, witnessed will (the 1963 attested will) admitted to probate.

### Statement of the Facts

Fred Sola (Fred) died on July 17, 1987, leaving neither spouse nor issue. Fred had executed a formal, attested will on November 2, 1963, which was prepared by an attorney, Thomas L. Bocci. The original of this will was retained in Mr. Bocci's office.

Fred was one of six brothers, three of whom predeceased him. One of Fred's surviving brothers is the petitioner, Anthony. When their brother Ernest (Ernie) died in 1986, he left a portion of his estate to the adult children of their predeceased brother David. Anthony and Fred had discussed the manner in which the nieces and nephews had behaved relative to Ernie's will. Fred discussed making a new will or changing his will, but Anthony could not get him to go to an attorney to prepare such a will. Instead, Fred made a number of interlineations and handwrote a number of provisions on his copy of the 1963 attested will. This document, the purported will, is the document claimed to be valid as a holographic will.

Ted Lipke testified that during the last year of Fred's life he saw him three to four times a week. On several occasions they discussed the fact that Fred's nieces and nephews were squabbling over the estate of his brother Ernie and, because of this, he wanted to make sure that they did not receive any part of his estate. On June 11, 1987, Fred brought the purported will to Ted's garage and asked Ted's advice regarding changing the will. Ted told him: "If you make any changes on it, you got to make sure that you date it and sign it, or if you make little changes, initial those changes." The purported will already had handwriting on it before Ted saw it that day and Fred made a few more changes to it with a blue pen; some of the words had been scratched out with a different pen prior to this time. A portion of the purported will had been taped.

After Fred's death, the coroner found the purported will pinned on the wall behind Fred's favorite chair.

The purported will, as noted, was actually an altered copy of the 1963 will. On it,[1] above the typewritten portions of the first page, the following words had been written:

"SIGNED IT ON              I Fred Sola
PAGE 2 I DESTROYED      where I *pencil*
PAGE 2 *IT'S OUT*            OUT IS OUT
                                       Fred Sola
                          THIS IS ME TALKING
             6/11/1987 USE THIS WILL."

The first typewritten clause, "I hereby revoke any and all former wills and codicils to wills made by me," had been scratched out, as had been the second clause, which directed payment of his debts and funeral expenses. Here appeared the handwritten interlineation, "I appoint my Broter [*sic*] A. T. Sola to take care of this will," above which the signature "Fred Sola" had been written and an arrow pointed to the signature. The third clause, declaring that the testator was without spouse or issue, was left untouched. An arrow on the left side of the page pointed to the fourth clause, which devised the estate to the named beneficiaries. This clause had been left intact up to the point where the names of the three beneficiaries appeared. "Tony Sola" had been handwritten above the typewritten name of Fred's predeceased brother Ernie, which had been scratched out, as had been the names of Anthony and Anna Marie. The subsequent sentence, which provided for distribution in the event one of the named beneficiaries should predecease the testator, was also scratched out. The fifth clause, which contained a "no contest clause," appears to be partially scratched out at the beginning, but was left without marking, except for the last words on page one, "in lieu of the provisions," which were scratched out. Taped to the bottom of page one was the rest of the sentence related to the "no contest clause" which had originally appeared at the top of page two of the 1963 will. At the bottom of the page Fred had written, "Signed Fred Sola." The second page of the 1963 will contained the sixth and seventh clauses of the will, which appointed Crocker-Anglo National Bank and Thomas L. Bocci as executors of the will, and the law firm of Thomas L. Bocci as attorneys for the executor. These clauses, as well as the attestation clauses and signatures of the decedent and the two witnesses to the 1963 will, were not included as part of the 1987 purported will.

The trial court found that while the words, signatures and delineations on the purported will were made entirely in the handwriting of the testator, the

---

[1] The 1963 attested will was typewritten. It was two pages long, the first page including the provisions devising the estate to the named beneficiaries and the second page nominating Attorney Thomas L. Bocci as coexecutor and requesting that he act as attorney for the executors of the estate.

By the terms of this will, Fred's estate was to be distributed in equal shares to his brothers Ernie and Anthony, and Anna Marie.

purported will was insufficient to constitute a holographic will in that the printed provisions were relevant to the substance of the will, they were essential to the validity of the will and the testator intended the printed provisions to be incorporated as part of the will. Further, the court found that the testator did not intend that the printed matter be included mechanically in the body of the text; rather, he intended to include the printed text because of its importance and materiality. The court further found the testator felt he was destroying or revoking the 1963 will and did not intend that his signature to that will have any validity. His intent, manifested by his written words and his actions in destroying page two and taping part of it to page one, was not to incorporate the 1963 will into the 1987 purported will.

The court concluded that the 1963 attested will had not been legally revoked, and sustained the contest to the 1987 purported will, which was denied admission to probate. The November 2, 1963, attested will was found valid and admitted to probate.

### Discussion

### I.

### *Was the 1987 purported will a valid holographic will?*

■ "[T]he validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law. [Citations.] . . . The policy of the law is toward a construction favoring validity, in determining whether a will has been executed in conformity with statutory requirements. [Citations] . . . . [T]he tendency of both the courts and the Legislature [has been] toward greater liberality in accepting a writing as a holographic will [citation.] . . . . [Citation.] Substantial compliance with the statute, and not absolute precision is all that is required . . . ." (*Estate of Black* (1982) 30 Cal.3d 880, 883 [181 Cal.Rptr. 222, 641 P.2d 754], quoting *Estate of Baker* (1963) 59 Cal.2d 680, 683, 685 [31 Cal.Rptr. 33, 381 P.2d 913], italics and internal quotation marks omitted.) In the construction of a will, the primary rule is that the intent of the testator as expressed in the will itself must be given effect as much as possible. (*Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal.Rptr. 561, 444 P.2d 353].)

Appellant asks the court to determine the validity of the 1987 purported will in light of the policy of the law favoring a construction resulting in the

validity of a holographic will.[2] We decline to view this as the sole basis for determination of the validity of a holographic will. "Even rules of liberal construction do not permit us to ignore clear and explicit statutory requirements . . . . The question whether a will was executed in conformity with statutory requirements must be determined by reference to what the statutes themselves require. It is not enough to say that the procedures actually followed, while not in accordance with those requirements, were arguably good." (*Estate of Twohig* (1986) 178 Cal.App.3d 555, 559 [223 Cal.Rptr. 352], quoting *Estate of Mangeri* (1976) 55 Cal.App.3d 76, 82-83 [127 Cal.Rptr. 438], internal quotation marks omitted.) ■ The determination of whether or not a document constitutes a holographic will is governed by statute. Section 6111 of the California Probate Code, operative January 1, 1985, is applicable to estates of decedents like Fred Sola who died after that date. It provides, in part: "(a) A will that does not comply with Section 6110 [which pertains to formal, attested wills] is valid as a holographic will, whether or not witnessed, if the signature and the *material provisions* are in the handwriting of the testator." (Italics added.)

Appellant contends that the handwritten words at the top of the purported will are "self-contained" and qualify as a holographic will that is separate and does not integrate with the handwriting and typewritten words on the rest of the page. The signature and handwriting on the purported will are those of the testator. Testimony offered by Ted Lipke at trial that he observed Fred write on the purported will in his presence, including at least one signature, was received into evidence, as was Anthony's identification of the signatures on the document as those of Fred. Thus, this aspect of statutory compliance is met.

The language of Probate Code section 6111 is consistent with the established legal principle that, where statutory compliance is evident, typed or printed matter on the same paper as the holographic instrument will be disregarded if it is surplusage. Thus, in *Estate of Black, supra*, 30 Cal.3d 880, the California Supreme Court upheld a holographic will written on three pages of a preprinted stationer's form that was to be used for a one-page will. The court disregarded the printed portions on the will as irrelevant to the "substance" or dispositive provisions of the will. (30 Cal.3d at p. 885.) The court stated: "No sound purpose or policy is served by invalidating a holograph where every statutorily required element of the will is concededly expressed in the testatrix' own handwriting and where her testamentary intent is clearly revealed in the words as she wrote them." (*Id.* at p. 888.)

---

[2] Section 6140 of the Probate Code, operative January 1, 1985, and therefore applicable to the purported holographic will in the instant case, in relevant part provides: "(a) The intention of the testator as expressed in the will controls the legal effect of the dispositions made in the will."

In determining whether the printed words are to be deemed surplusage to an otherwise valid holographic will, the court in *Black* noted these issues: "Was the particular provision relevant to the substance of the will? Was it essential to the will's validity? Did the testator intend to incorporate the provision? Would invalidation of the holograph defeat the testator's intent?" (30 Cal.3d at p. 885.) In interpreting the language of then section 53 of the Probate Code, the *Black* court viewed the " 'incorporation' language of the statute not so much as focusing on whether the testator intended to include the printed matter mechanically into the physical body of the text but more on whether, because of its importance or materiality to the testamentary message, he intended to include it.' [Citations.]" (*Id.* at pp. 885-886.)

In the instant case, the trial court properly denied admission of Fred's purported holographic will to probate. Where the handwriting in itself lacks testamentary intent and substance and has meaning only in relationship to the typewritten words it relates to, there is no complete testamentary document that can be deemed a holographic will. (*Estate of Phifer* (1984) 152 Cal.App.3d 813, 817 [200 Cal.Rptr. 319].) The printed words on the page cannot be viewed as surplusage to a complete testamentary instrument. The handwritten words[3] are meaningless without reference to the words of the formal, attested will on which the handwritten words appear. The words used, along with the arrows pointing to the printed clause and the signature of the testator, evidence the intent of the decedent that the words not be read apart from the handwritten and typewritten words on the rest of the page. While the liberal trend of the *Black* court establishes "substantial compliance" with statutory formalities as sufficient to render a writing a valid holographic will, these notations cannot be deemed to be "material provisions" of substance in the handwriting of the testator.

In the alternative, appellant would have the court find that the writings and interlineations on the purported will act as a holographic codicil on the authority of *Estate of Nielson* (1980) 105 Cal.App.3d 796 [165 Cal.Rptr. 319]. In *Nielson*, the testator validly executed a typewritten, attested will, leaving the bulk of his estate to his mother. In the event she predeceased testator, the estate would go to various charities named in the instrument. Lines on the will had been drawn through the dispositive provisions relating to the enumerated charities. The handwritten words, "Bulk of Estate—1. Shrine Hospital for Crippled Children—Los Angeles. $10,000—2.—Society for Prevention of Cruelty to Animals (nearest chapter)" were interlineated in their place. Testator placed his initials at the margin of these cancellations and interlineations. The date of the 1969 will was crossed out and

---

[3] "Signed It on Page 2 I Destroyed Page 2 It's Out I Fred Sola where I *pencil* Out Is Out Fred Sola This Is Me Talking 6/11/1987 Use This Will".

followed by the date "November 29, 1974." These handwritten words appeared at both the top and bottom of the typewritten will: "*Revised* by Lloyd M. Nielson November 29, 1974." (*Estate of Nielson, supra,* 105 Cal.App.3d at p. 800.) On the issue of whether or not a holographic will or codicil resulted from the testator's handwriting on the face of his attested will, the court stated: "An examination of the document, in its entirety, leads to these conclusions: the typewritten words are not relevant to the substance of the holograph or essential to its validity as a will or codicil. Nor do the written or express words or physical ordering of relationships indicate any intention that the holograph unite, form or blend with the provisions of the typewritten will. Nor does the word-content of the holograph indicate any intent to integrate the handwriting with the typewritten will. We conclude no evidence from the face of this document tells us the author intended to 'incorporate' directly or indirectly the typewritten will into the provisions which are in his handwriting so as to render the handwriting ineffective as a will or codicil and thereby defeat the author's declared testamentary intent." (*Id.* at p. 804.)

Appellant maintains that Fred used a similar method to that used by the testator in *Nielson* to change his will. The handwritten portions on Fred's purported will, however, do not merely identify, as they did in *Nielson*, the portions of the attested will to be revoked or incorporated by reference. Rather, in the instant case, the handwritten portions cannot be understood without reference to the typewritten words. Fred's intent, as evidenced on the face of the purported will, was that the handwritten words "Tony Sola" blend with the typewritten words preceding them to explain the devise; these handwritten words are otherwise meaningless. The words "USE THIS WILL" refer to the will in its entirety; the handwritten and typewritten words are to be construed together as the will, including as part of the purported will the portion of the 1963 will taped to the bottom of the document.[4]

## II.

*Did the 1987 purported will revoke the 1963 attested will?*

■ The trial court found that the 1963 formal, witnessed will remains unrevoked. Probate Code section 6120, applicable to estates of decedents

---

[4] Appellant's argument that incorporation by reference (Prob. Code, § 6130) is applicable in the instant case can have merit only if the handwritten words on the 1987 document are a valid holographic will. Since there is no valid holographic will or codicil, the cases appellant presents in support of his argument for incorporation by reference are inapplicable to the instant case.

who died on or after January 1, 1985, denotes the acts that effect a valid revocation of a will:

"A will or any part thereof is revoked by any of the following:

"(a) A subsequent will which revokes the prior will or part expressly or by inconsistency.

"(b) Being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it, by either (1) the testator or (2) another person in the testator's presence and by the testator's direction."

Under Probate Code section 6120, subdivision (a), the 1963 attested will or part of it can be held to be revoked only if the purported will qualifies as a holographic will that expressly effects complete or partial revocation of the 1963 attested will. Under section 6120, subdivision (b), the 1963 attested will would still be in effect, as it was not destroyed. The original will was introduced into evidence at trial.

### Conclusion

The decision of the trial court to deny probate of the 1987 purported will is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied December 17, 1990, and appellant's petition for review by the Supreme Court was denied February 14, 1991. Panelli, J., was of the opinion that the petition should be granted.