IN RE ESTATE OF EILEEN C. FOXLEY, DECEASED.
JOHN FOXLEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF
EILEEN C. FOXLEY, DECEASED, APPELLEE, V.
MICHAEL LUKE HOGAN, APPELLANT.

568 N.W.2d 912

Filed September 9, 1997. No. A-96-497.

David L. Welch and Lisa M. Meyer, of Gaines, Mullen, Pansing & Hogan, for appellant.

Charles F. Gotch and Michael K. Huffer, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Michael Luke Hogan appeals from a decision of the Douglas County Court admitting a purported holographic codicil for probate.

## BACKGROUND

On February 8, 1985, the testator, Eileen C. Foxley, executed a valid will. The original will and a photocopy thereof, marked "photocopy" on each page, were in Foxley's possession. The relevant terms of the will provided that the bulk of Foxley's estate was to be divided among her six daughters in equal shares. On December 19, 1993, one of Foxley's daughters died, leaving her only child, Michael Luke Hogan, the appellant, surviving her.

Foxley died less than a year later. On the day of Foxley's death, two of her daughters found in the den of her home a folder containing Foxley's original will and the photocopy of the will. The photocopy of the will had been changed in the following manner on the first page:

---

ARTICLE I

My only children are William C. Foxley, Sarah F. Gress, John C. Foxley, Winifred F. Wells, Elizabeth F. Leach, Shiela F. Radford, Mary Ann Pirolle and ~~Jane F. Jones~~. *her share to be divided to between my daughters E.F. [1-3-94]*

ARTICLE II

After consulting with my children, my personal representative

---

The third page had been changed as follows:

---

ARTICLE III

I hereby give, devise and bequeath all of the rest of my proper to my ~~six~~ (6) daughters in equal shares. *5*

ARTICLE IV

I hereby nominate and appoint my son, John C. Foxley, as the

---

Foxley's personal representative submitted the original will and the photocopy, alleged to be a codicil, for probate. Hogan objected to the admission of the photocopy of the will, alleging, inter alia, that it was not executed with the formalities required for a valid will or codicil. Trial was then had on the matter.

At trial, evidence was adduced that Foxley did not like Hogan. Foxley believed that Hogan had verbally, if not physi-

cally, abused the daughter. On January 7, 1994, approximately 3 weeks after the daughter died, Foxley approached one of her attorneys, James Schumacher, regarding an irrevocable trust that had been previously established. Foxley had learned that Hogan would take the daughter's share of the irrevocable trust, and she informed Schumacher that "she wanted [Hogan] bought out. She didn't want him as an ongoing beneficiary of that trust. . . . She didn't want to think about [Hogan] participating in that trust."

During this same conversation, Foxley and Schumacher also discussed Hogan's participation in Foxley's estate. Foxley "emphatically" indicated that she did not want Hogan participating in her estate and informed Schumacher that she would " 'take care of it.' " Schumacher explained that he had known Foxley for a number of years, and to him, the statement " 'I'll take care of it' " meant " 'butt out . . . [t]his is my business.' "

Foxley's daughter Winifred Wells testified that the way her mother handled her affairs did not surprise her. Wells explained that her mother had raised eight children on her own and was "used to handling her own affairs" and that "[s]he felt her own opinions were more savvy and meant more to her than most other people — whether they be professional people or her children." Wells explained that her mother regretted that in setting up the trust, she had overlooked the possibility that one of her daughters might predecease her. Wells confirmed that her mother was explicit that she did not want Hogan to participate in her estate.

The trial court, observing that "some mystery remains as to why . . . a woman of wealth would refrain from using the services of an attorney," found that Foxley had substantially, if not fully, complied with the requirements of a holographic codicil. Accordingly, the court admitted the photocopy and Foxley's original will to probate. Hogan timely appealed from this order. For the reasons set forth below, we affirm.

## ASSIGNMENTS OF ERROR

Restated, Hogan alleges the trial court erred in finding that the photocopy of the will with the interlineations constituted a valid holographic codicil.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996); *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995).

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Richardson v. Mast*, 252 Neb. 114, 560 N.W.2d 488 (1997); *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

In reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997); *Cotton v. Ostroski, supra*; *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993).

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Hynes v. Hogan*, 251 Neb. 404, 558 N.W.2d 35 (1997); *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996).

## DISCUSSION

The parties concede that Foxley's original 1985 will was executed with all of the formalities required by Neb. Rev. Stat. § 30-2327 (Reissue 1995) and was properly admitted to probate. It is also undisputed that the changes made on the photocopy of the will were not executed with the formalities required by § 30-2327, and thus, unless the changes made on the photocopy qualify it as a holographic document under Neb. Rev. Stat. § 30-2328 (Reissue 1995), the changes have no legal effect.

■ Section 30-2328 in pertinent part provides: "An instrument which purports to be testamentary in nature but does not comply with section 30-2327 is valid as a holographic will, whether or not witnessed, if the signature, the material provisions, and an indication of the date of signing are in the handwriting of the testator . . . ."

The comment to § 30-2328 (Reissue 1989) provides, inter alia:

> This section enables a testator to write his own will in his handwriting. There need be no witnesses. By requiring only the "material provisions" to be in the testator's handwriting (rather than requiring, as some existing statutes do, that the will be "entirely" in the testator's handwriting) a holograph may be valid even though immaterial parts such as introductory wording be printed or stamped. A valid holograph might even be executed on some printed will forms if the printed portion could be eliminated and the handwritten portion could evidence the testator's will.

Hogan does not contend that § 30-2328 is applicable only to a holograph which purports to represent a complete and all-encompassing testamentary document. In other words, there is no suggestion in Hogan's appeal that § 30-2328 should not be applied to validate a holographic codicil, which, by definition, only supplements, adds to, or qualifies an existing will. See *Flint v. Panter*, 187 Neb. 615, 193 N.W.2d 279 (1971). Indeed, the term "will" found in § 30-2328 is defined in the Nebraska Probate Code to mean

> any instrument, including any *codicil* or other testamentary instrument complying with sections 30-2326 to 30-2338, which disposes of personal or real property, appoints a personal representative . . . , revokes *or revises* an earlier executed testamentary instrument, or encompasses any one or more of such objects or purposes.

(Emphasis supplied.) Neb. Rev. Stat. § 30-2209 (Reissue 1995).

It is undisputed that the alterations made on the photocopy of the will are in Foxley's handwriting, that the signature is in Foxley's handwriting, and that Foxley dated the instrument when she made the changes. Hogan also does not dispute that by crossing out the name "Jane F. Jones" and writing "her share to be divided to [sic] between 5 daughters," Foxley intended to exclude Hogan from her estate. See Neb. Rev. Stat. § 30-2343 (Reissue 1995) (if devisee who is related to testator predeceases testator, devisee's issue who survive testator take in place of deceased devisee). In fact, Hogan acknowledges that "[a]t trial, evidence was adduced that Eileen Foxley did not like Michael

Luke Hogan, did not want to have anything to do with him, and did not want him to receive anything from her estate." Brief for appellant at 7.

Notwithstanding, Hogan asserts that he is entitled to a portion of Foxley's estate because Foxley failed to comply with § 30-2328. Specifically, Hogan argues that the purported changes are invalid as a holographic codicil because the handwriting does not evidence any testamentary intent and the "material provisions" are not in Foxley's handwriting, both express prerequisites to a valid holograph under § 30-2328.

*Testamentary Intent.*

In support of his position, Hogan directs us to *Cummings v. Curtiss*, 219 Neb. 106, 361 N.W.2d 508 (1985). In that case, a client, who was one of the two sole beneficiaries named in a will, sued his attorney, claiming that the attorney had made fraudulent misrepresentations. The will had been executed on a printed will form, and relatives of the testator contested the validity of the will. The relatives subsequently approached the client with a settlement offer. The client's attorney expressed reservations about the validity of the will and encouraged the client to accept the settlement offer. After accepting the offer, the client learned of the statute on holographic wills and sued his attorney, claiming that the attorney had falsely represented that the will was invalid. The district court granted the attorney's motion for summary judgment, and the client appealed.

After examining cases from other jurisdictions, the Supreme Court stated that "case law based on similar statutes in other states indicates that only the portion of the will actually in the handwriting of the testator is to be considered. . . . [Citations omitted.] The important determination is whether 'the handwritten portion clearly express[es] a *testamentary* intent.'" *Id.* at 109, 361 N.W.2d at 510. The handwritten portion of the document read:
"Nebraska
Pierce
Ren J Kroupa
For helping me and taking care of me
Frank Kroupa Jr. and Bobby Cummings

w.r.o.s.
the court
who the courts decides [sic]
Pierce      Pierce
Nebraska      29 Jan 79
Witness is chief of police Gordon Halbmayer [sic]
who i gave this to keep safe for me.
Ren J Kroupa."

*Id.* at 109, 361 N.W.2d at 510-11.

In affirming the decision of the district court, the Supreme Court stated that "[b]ased on this language alone, it is *doubtful* that the requisite testamentary intent was demonstrated and that all material portions of a will were present." (Emphasis supplied.) *Id.* at 109, 361 N.W.2d at 511.

In reaching its conclusion, our Supreme Court relied in part on *Matter of Estate of Johnson*, 129 Ariz. 307, 630 P.2d 1039 (1981) (finding that holographic will, executed on preprinted form, was invalid because when printed words were eliminated no testamentary intent was evidenced). However, in *Matter of Estate of Muder*, 159 Ariz. 173, 765 P.2d 997 (1988), the Arizona Supreme Court revisited the subject of wills written on preprinted forms. The court, in finding that the document was a valid holographic will, noted:

> We believe that our legislature, in enacting the present statute . . . intended to allow printed portions of the will form to be incorporated into the handwritten portion of the holographic will as long as the testamentary intent of the testator is clear and the protection afforded by requiring the material provisions be in the testator's handwriting is present.
>
> . . . .
>
> . . . We hold that a testator who uses a preprinted form, and in his own handwriting fills in the blanks by designating his beneficiaries and apportioning his estate among them and signs it, has created a valid holographic will. Such handwritten provisions may draw testamentary context from both the printed and the handwritten language on the form. We see no need to ignore the preprinted words when the testator clearly did not, and the statute does not require us to do so.

. . . "If testators are to be encouraged by a statute like ours to draw their own wills, the courts should not adopt upon purely technical reasoning a construction which would result in invalidating such wills . . . ."

(Emphasis omitted.) *Id.* at 176, 765 P.2d at 1000.

The language used by the Nebraska Supreme Court in *Cummings* is less than a holding that the will involved was invalid. Whether the court would have declared it so if directly faced with the issue, we cannot speculate. Moreover, whether our court would do so today, given the apparent change in Arizona case law upon which our court in part relied, is equally conjectural. However, the facts of our case are clearly distinguishable from *Cummings* in any event. Of course, the major difference is that we have an original, validly executed will to begin with. Moreover, unlike the testator in *Cummings*, by crossing out "Jane F. Jones" and writing "her share to be divided to between 5 daughters" on the photocopy, Foxley clearly demonstrated a testamentary intent. Even Hogan has no doubt about his grandmother's intent.

The court in *Succession of Burke*, 365 So. 2d 858 (La. App. 1978), examined similar language and reached the same conclusion as we have. In that case, the court was faced with the issue of the validity of a will written on a preprinted form. The court observed that in a previous case it had held that a will was invalid because the phrase " 'All to my sister' " did not evidence a testamentary intent. *Id.* at 860. In the case that was before the court in *Succession of Burke*, the testator's will read, " '[T]o my sister Delia . . . my interest in property at 6315 West End Blvd . . . and Insurance . . . . To be shared equally with my other sister . . . .' " *Id.* at 859. The court found that the "writing speaks of decedent's immovable property . . . and insurance and says it is 'to be shared' by two sisters. Thus that writing . . . does contain, in a context referable to the testator's intent, a verb." *Id.* at 860. Foxley's use of the phrase "to be *divided*" similarly contains a verb in a context referable to her intent. (Emphasis supplied.)

The evidence established that Foxley did not want Hogan to inherit from her estate and that Foxley told her attorney that she " 'would take care of it.' " Because Hogan had inherited the daughter's share from the trust, Foxley knew that Hogan would

inherit under her will unless she changed her will. Foxley crossed out the daughter's name and wrote that the daughter's share was to be divided among Foxley's five remaining daughters. While it may be perplexing that Foxley chose to take care of this herself rather than have her attorney make the changes, her testamentary intent was amply demonstrated.

*Material Provisions.*

Relying on *In re Estate of Sola*, 225 Cal. App. 3d 241, 275 Cal. Rptr. 98 (1990), Hogan argues that the codicil is invalid because the material provisions are not in Foxley's handwriting. In *In re Estate of Sola*, the testator had executed a valid will in 1963. The testator's attorney kept the original will and gave the testator a copy. In 1986, one of the testator's brothers died and left a portion of his estate to his nieces and nephews. After seeing how the nieces and nephews behaved relative to the estate, the testator wanted to ensure that they did not receive anything from his own estate. To effect this result, on the copy of his will the testator scratched out certain names and wrote in the name of another brother. In rejecting the validity of the change, the court held that "[w]here the handwriting in itself lacks testamentary intent and substance and has meaning only in relationship to the typewritten words it relates to, there is no complete testamentary document that can be deemed a holographic will." *Id.* at 247, 275 Cal. Rptr. at 101. In distinguishing an earlier case, the court stated, "The handwritten portions on [the testator's] purported will, however, do not merely identify, as they did in *Nielson*, the portions of the attested will to be revoked or incorporated by reference. Rather . . . the handwritten portions cannot be understood without reference to the typewritten words." *Id.* at 248, 275 Cal. Rptr. at 102.

Hogan argues that "Eileen Foxley's handwritten additional words—'her share to be divided to between 5 daughters'—cannot be understood without reference to the original Will's typewritten words. Standing alone, these handwritten words have no meaning. Thus, the handwritten portion in question fails to qualify as a holographic will or codicil." Brief for appellant at 16.

Unlike the handwriting in *In re Estate of Sola*, as we concluded above, Foxley's handwritten changes do evidence a testamentary intent. The "material provisions," insofar as the pho-

tocopy is concerned, are the changes Foxley made in her handwriting. Hogan is not entirely correct in arguing that we do not know what "her share" means without reference to the original will. The line through the name of Jane F. Jones also appears on the photocopy, and it would be absurd to say that the *line* through the name can legally be considered because it is in Foxley's handwriting, but the name through which the line is drawn must be ignored. Even were we to accept as correct that Foxley's handwritten words take on meaning only by reference to the original will, that is the nature of codicils, holographic or otherwise.

    ■ A "codicil" in reality, is a will or testamentary instrument. However it is not a new will; a "codicil" is a supplement to, an addition to or qualification of, an existing will, made by the testator, to alter, enlarge, or restrain the provisions of the will, to explain or republish it, or to revoke it. . . . A codicil is dependent for its life and force on the life and force of the will to which it is an adjunct. It does not supersede the will, as an after-made will would do; it is a part of the will; and both the codicil or codicils and the will make only one will.

94 C.J.S. *Wills* § 1 b. at 678-79 (1956).

    A codicil republishes the will, and the several clauses of a will and codicil should, if possible, be harmonized so as to give effect to every provision of each instrument, provided that such construction is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument.

79 Am. Jur. 2d *Wills* § 680 at 765 (1975).

The fact that Foxley chose to make her changes on the photocopy of her will identifies the document as a codicil to her will. Hogan would have us view these changes as if Foxley's handwriting had appeared on a blank piece of paper reading, "————— her share to be divided to between 5 daughters E.F. 1-3-94 —— 5." But we have much more than that before us. We have changes made in Foxley's handwriting, next to the obliteration of the name "Jane F. Jones," appearing in a specific sentence in a specific paragraph of a photocopy of a validly executed will.

Nonetheless, whether the photocopy with the handwriting and with the daughter's name obliterated is read alone or whether it and the will are read together, it is undeniably clear that "her share" is Jane F. Jones' share. Because the daughter had predeceased her, Foxley intended to distribute "her share" among the daughter's surviving sisters.

*Incorporation by Reference.*

Hogan also claims error in the county court's application of Neb. Rev. Stat. § 30-2335 (Reissue 1995) in this case. In that connection the county court found, "A codicil, by definition, necessarily refers to the original will. By placing the holographic entries on a photocopy of her will, the Testatrix made an incorporation by reference. This is contemplated by Neb. Rev. Stat. Sec. 30-2335 (Reissue 1989)." Hogan argues that the county court thus allowed "an invalidly executed nontestamentary document to incorporate a validly executed Will . . . . This is clearly wrong as a matter of law." Brief for appellant at 17-18.

Our previous discussion addresses and rejects the underlying premise of Hogan's argument, that being that the photocopy is an "invalidly executed nontestamentary document." We believe the writings and obliterations on the photocopy of Foxley's will, under the circumstances of this case, comply with the requirements of § 30-2328 and constitute a valid holographic codicil to Foxley's 1985 validly executed will. Accordingly, the document with those writings and changes was properly admitted to probate along with Foxley's will.

To further explain, the validity of Foxley's codicil does not depend upon whether it successfully incorporated the original will by reference. Rather, its validity is determined by whether it complies with the requirements for holographic testamentary instruments under § 30-2328. It does. Granted, a codicil takes on meaning only by reference to an existing will which it modifies. Thus, the will intended to be altered by the codicil must be identifiable. By placing her handwritings on a photocopy of her will, Foxley chose a simple yet very effective method to unmistakably evidence her intent in this regard. Since our affirmance of the county court's decision does not depend upon whether Foxley accomplished a valid incorpora-

tion of the original will into the codicil by reference, we need not decide the applicability of § 30-2335 in this case.

## CONCLUSION

Although we have not discussed every case cited by Hogan, we have carefully considered them along with similar cases in disposing of this appeal. We have found that the law in this area is continuing to develop and change. See, e.g., *In re Estate of Sola*, 225 Cal. App. 3d 241, 275 Cal. Rptr. 98 (1990); *Matter of Estate of Muder*, 159 Ariz. 173, 765 P.2d 997 (1988); *Estate of Nielson*, 105 Cal. App. 3d 796, 165 Cal. Rptr. 319 (1980); *Scott v. Schwartz*, 469 S.W.2d 587 (Tex. Civ. App. 1971); *Estate of Erbach*, 41 Wis. 2d 335, 164 N.W.2d 238 (1969); *Poole v. Starke*, 324 S.W.2d 234 (Tex. Civ. App. 1959). However, in those cases found wherein the purported holographic documents were invalidated, the courts relied in part upon a determination that the handwriting, standing alone, did not evidence a testamentary intent. As discussed earlier in this opinion, we believe the changes made by Foxley, which importantly include the striking out of her deceased daughter's name, did evidence her testamentary intent, and this, in our view, is a significant distinction.

The general comment to the Nebraska Probate Code relating to wills provides in pertinent part: "If the will is to be restored to its role as the major instrument for disposition of wealth at death, its execution must be kept simple. The basic intent of these sections is to validate the will whenever possible." Neb. Rev. Stat. ch. 30, art. 23, part 5 (Reissue 1989).

> [T]he primary legislative purpose of the holographic will statute [is] the prevention of "fraudulent will-making and disposition of property" by virtue of the recognized difficulty of forging an entire handwritten instrument. . . . "[The holographic provision] owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that, therefore, the requirement that it should be in the testator's handwriting would afford protection against a forgery of this character."

*Estate of Black*, 30 Cal. 3d 880, 884, 641 P.2d 754, 756, 181 Cal. Rptr. 222, 224 (1982).

"An overly technical application of the holographic will statute to handwritten testamentary dispositions, which generally are made by persons without legal training, would seriously limit the effectiveness of the legislative decision to authorize holographic wills." *Id.*

In the present case, there is no suggestion of fraud, undue influence, lack of testamentary capacity, or mistaken intent. All the statutory safeguards for preventing fraud have been complied with. The changes were in Foxley's handwriting and were signed and dated by her. Nullification of Foxley's handwritten codicil would result in a portion of Foxley's estate passing to a person whom she did not want to receive it. Her intentions were emphatically, unequivocally, and repeatedly demonstrated by her spoken words, her writings, and her actions. Even Hogan candidly admits that Foxley's desire was to eliminate him as a recipient of her estate. Most importantly for our purposes, her intent was expressed in a valid holograph, which the Legislature, by adopting § 30-2328, has directed be given effect as a testamentary instrument. The judgment of the county court admitting this codicil to probate is correct and is affirmed.

AFFIRMED.