IN RE ESTATE OF EILEEN C. FOXLEY, DECEASED.
JOHN FOXLEY, PERSONAL REPRESENTATIVE OF THE
ESTATE OF EILEEN C. FOXLEY, DECEASED, APPELLEE,
V. MICHAEL LUKE HOGAN, APPELLANT.
575 N.W.2d 150

Filed March 13, 1998.    No. S-96-497.

David L. Welch and Lisa M. Meyer, of Gaines, Mullen, Pansing & Hogan, for appellant.

Charles F. Gotch and Michael K. Huffer, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

In his petition for further review, the appellant, Michael Luke Hogan, seeks review of the Nebraska Court of Appeals' decision admitting a purported holographic codicil for probate. We now reverse.

## BACKGROUND

Eileen C. Foxley executed a valid will on February 8, 1985. Foxley received the original will and a photocopy thereof. At the time she executed the will, she had six daughters and two sons. The relevant portion of the will provided that the bulk of Foxley's estate was to be divided among her six daughters in equal shares. In December 1993, one of the daughters, Jane F. Jones, died and was survived by her only son, Hogan.

Foxley died in October 1994. Upon her death, two of her daughters found a folder containing the original will and the photocopy of the will in the den of Foxley's home. The photocopy of the will had been changed in the following manner on the first page:

---

ARTICLE I

My only children are William C. Foxley, Sarah F. Gress, John C. Foxley, Winifred F. Wells, Elizabeth F. Leach, Shiela F. Radford, Mary Ann Pirotte and ~~Jane F. Jones.~~ *her share to be divided to between* ARTICLE II *my daughters E.F. 1-7-94*

After consulting with my children, my personal representative

---

The third page had been changed as follows:

---

ARTICLE III

I hereby give, devise and bequeath all of the rest of my

proper to my ~~six~~ (6) daughters in equal shares.

*5*        ARTICLE IV

I hereby nominate and appoint my son, John C. Foxley, as the

---

Foxley's personal representative submitted the will and the photocopy, alleged to be a codicil, for probate. Hogan objected to the admission of the photocopy, alleging that it was not executed with the formalities necessary for a valid will or codicil.

At trial, evidence was adduced that Foxley did not like Hogan, believing that Hogan abused Jones. Evidence indicated that on January 1, 1994, approximately 3 weeks after Jones died, Foxley approached one of her attorneys, James Schumacher, regarding a previously established irrevocable trust. After learning that Hogan would take Jones' share of the trust, Foxley told Schumacher that she wanted Hogan bought out and did not want him to be an ongoing beneficiary or to participate in the trust.

During the same conversation, Foxley "emphatically" indicated that she did not want Hogan participating in her estate and told Schumacher that she would "take care of it." Schumacher explained that based on his long relationship with Foxley, he took Foxley's statement to mean "butt out . . . this is my business."

Foxley's daughter Winifred Wells testified that after raising eight children on her own, Foxley was used to handling her own affairs and felt her opinions were "more savvy" and "meant more to her than most other people['s opinions]." Wells testified that Foxley regretted that in setting up the trust she had overlooked the possibility that one of her daughters might predecease her. Wells also testified that Foxley explicitly stated that she did not want Hogan to participate in her estate.

The trial court found that Foxley had substantially, if not fully, complied with the requirements of a holographic codicil and admitted the photocopy and original will to probate. The Court of Appeals affirmed this decision, finding that Foxley's

signature, the material provisions, and an indication of the date of signing were in her handwriting and that she had clearly demonstrated her intentions by her spoken words, her writings, and her actions. See *In re Estate of Foxley*, 6 Neb. App. 1, 568 N.W.2d 912 (1997). Therefore, the Court of Appeals found the codicil to be a valid holograph to be given effect as a testamentary instrument pursuant to Neb. Rev. Stat. § 30-2328 (Reissue 1995). See *In re Estate of Foxley, supra.*

## ASSIGNMENTS OF ERROR

In his assignments of error in the petition for further review, Hogan contends that the Court of Appeals erred (1) in determining that Foxley's changes on a photocopy of her will evidenced testamentary intent and qualified as material provisions under § 30-2328, (2) in failing to follow § 30-2328 in not requiring the material provisions of the alleged holographic codicil to be in the handwriting of the testator, and (3) in finding that Foxley's handwritten changes on a photocopy of her will constituted a validly executed holographic codicil.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of West*, 252 Neb. 166, 560 N.W.2d 810 (1997); *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996); *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997).

## ANALYSIS

The parties do not dispute that Foxley's original 1995 will was executed with all of the formalities required by Neb. Rev. Stat. § 30-2327 (Reissue 1995) and was properly admitted to probate. The parties also concede that the changes made on the photocopy of the will were not executed with the formalities required by § 30-2327 and therefore have no legal effect unless

the changes on the photocopy qualify it as a holographic document pursuant to § 30-2328.

Section 30-2328 provides in pertinent part: "An instrument which purports to be testamentary in nature but does not comply with section 30-2327 is valid as a holographic will, whether or not witnessed, if the signature, the material provisions, and an indication of the date of signing are in the handwriting of the testator . . . ." The parties do not dispute that the changes made on the photocopy of the will are in Foxley's handwriting, that the signature is in Foxley's handwriting, and that Foxley dated the instrument when she made the changes.

The Court of Appeals noted that the primary legislative purpose of a holographic will statute is to prevent fraud " 'by virtue of the recognized difficulty of forging an entire handwritten instrument. . . .' " *In re Estate of Foxley*, 6 Neb. App. at 12, 568 N.W.2d at 919, quoting *Estate of Black*, 30 Cal. 3d 880, 641 P.2d 754, 181 Cal. Rptr. 222 (1982). The Court of Appeals found that the changes on the photocopy of Foxley's will met the requirements of § 30-2327 and therefore created a valid holographic codicil, which, by definition, only supplements, adds to, or qualifies an existing will. *In re Estate of Foxley, supra*, citing *Flint v. Panter*, 187 Neb. 615, 193 N.W.2d 279 (1971). In his petition for further review, Hogan does not dispute the Court of Appeals' finding that § 30-2328 may be applied to validate a holographic codicil. Rather, Hogan contends that the Court of Appeals erred in finding the altered instrument to be a holographic codicil, because the handwriting does not evidence any testamentary intent and the material provisions are not in the handwriting of the testator as required by § 30-2328.

## TESTAMENTARY INTENT

In support of his argument, Hogan cites *Cummings v. Curtiss*, 219 Neb. 106, 361 N.W.2d 508 (1985). In *Cummings*, a client sued his attorney, claiming the attorney had made fraudulent misrepresentations because the attorney expressed reservations about a will executed on a printed will form and urged the client, one of the beneficiaries under the will, to accept a settlement offer urged by relatives of the testator. After accepting the offer, the client learned of the statute on holographic wills and

sued his attorney for falsely representing that the will was invalid. The district court granted summary judgment in favor of the attorney, and the client appealed.

In addressing whether handwriting on the original will constituted a valid holographic will, this court stated that only the portion of the will actually in the handwriting of the testator is to be considered; all other language is to be disregarded. This court further stated that the important determination is whether " 'the handwritten portion clearly express[es] a *testamentary* intent.' " *Id.* at 109, 361 N.W.2d at 510. The handwritten portion of the document read:

> "Nebraska
> Pierce
> Ren J Kroupa
> For helping me and taking care of me
> Frank Kroupa Jr. and Bobby Cummings
> w.r.o.s.
> the court
> who the courts decides [sic]
> Pierce      Pierce
> Nebraska      29 Jan 79
> Witness is chief of police Gordon Halbmayer [sic]
> who i gave this to keep safe for me.
> Ren J Kroupa."

*Id.* at 109, 361 N.W.2d at 510-511.

In affirming the decision of the district court, the *Cummings* court stated that "[b]ased on this language alone, it is doubtful that the requisite testamentary intent was demonstrated and that all material portions of a will were present." *Id.* at 109, 361 N.W.2d at 511.

In the instant case, the Court of Appeals found the facts to be distinguishable from *Cummings* because the present case involves an original, validly executed will, not a printed will form. The Court of Appeals further found that by crossing out "Jane F. Jones" and writing "her share to be divided to between 5 daughters" on the photocopy, Foxley clearly demonstrated her testamentary intent. While we recognize that the present case involves an original, validly executed will as opposed to the printed will form at issue in *Cummings*, the statutory requirements for a holographic instrument remain the same.

Therefore, in order to determine if the instrument is a valid holograph, we must apply the rule in *Cummings* to the facts of the instant case to determine whether the handwritten portion of the photocopy of the will clearly expresses testamentary intent. In the present case, the only provisions in Foxley's handwriting are "her share to be divided to between 5 daughters. E.F. 1-3-94" and "5." It is not clear which share is to be divided among which daughters without reference to the typewritten words. Therefore, it is clear that the handwritten words, standing alone, do not evidence a clear testamentary intent. We note, however, that the decedent's handwritten initials, as opposed to her whole name, constitute a signature within the meaning of § 30-2328. See *Estate of Morris*, 268 Cal. App. 2d 638, 74 Cal. Rptr. 32 (1969); *Kehr Will*, 373 Pa. 473, 95 A.2d 647 (1953).

Although one might be sympathetic toward giving effect to the decedent's perceived testamentary intent, the Legislature has chosen to require that testamentary intent be expressed in certain ways before an instrument is entitled to be probated as a will. Unfortunately for the decedent, the instrument in this case fails. See *Matter of Estate of Muder*, 159 Ariz. 173, 765 P.2d 997 (1988). In this case, the testimony of Foxley's attorney and her daughter Wells indicates that when Foxley changed the terms on the copy of her will, she was at least considering, if not actually intending, to write Hogan out of her will. We cannot conclude, however, that she had come to a final decision when writing on the copy of the will. We must remember that both the original and the copy of the will were found together in the den of Foxley's home, and an argument can be made that she was simply making notes on the copy of the will as to possible changes and had not, at the time of making those notes, made a final decision as to Hogan. If she was making a final decision, a plausible argument can be made that she would have made those changes on the original. If we make an exception in this case to the rule that holographic words, standing alone, have to demonstrate a clear testamentary intent, where do we stop? To weaken the rule would be to invite mischief or outright fraud by overreaching heirs, friends, or other potential beneficiaries taking advantage of testators in their most vulnerable moments, such as advanced age or right after an argument with one of the

children or grandchildren. If one has made a final decision to write an heir out of his or her will, this must be done in such a way that the expression of this intention complies with the statute. This is not the case with regard to the copy of Foxley's will, and we therefore find that the Court of Appeals erred in determining that the handwritten language on the copy of Foxley's will demonstrated the requisite testamentary intent.

## MATERIAL PROVISIONS

We first note that material provisions are defined as those provisions which express donative and testamentary intent. *Matter of Estate of Krueger*, 529 N.W.2d 151 (N.D. 1995). See *Matter of Estate of Muder, supra.* In support of his argument that the material portions of the will were not in Foxley's handwriting, Hogan cites *In re Estate of Sola*, 225 Cal. App. 3d 241, 275 Cal. Rptr. 98 (1990). In *In re Estate of Sola*, the testator executed a valid will, of which he had a copy. He later scratched out certain names on the photocopy of the will and wrote in the name of another one of his brothers. The court rejected the validity of the change, stating that "[w]here the handwriting in itself lacks testamentary intent and substance and has meaning only in relationship to the typewritten words it relates to, there is no complete testamentary document that can be deemed a holographic will." *Id.* at 247, 275 Cal Rptr. at 101.

Hogan argues that Foxley's additional handwritten words cannot be understood on their own without reference to the original will's typewritten words and that therefore, the handwritten document fails to qualify as a holographic codicil. We agree. When read on their own without reference to the original will, Foxley's words cannot be understood. The statement "her share to be divided to between 5 daughters" does not express testamentary intent and is not clear without a handwritten reference to which daughter is to be excluded. Similarly, the line through "Jane F. Jones" is not sufficient because that line has no meaning unless read in conjunction with the typewritten names. Without the requisite testamentary intent, Foxley's handwritten words cannot be deemed material provisions. Therefore, we find that the record does not support the Court of Appeals' judgment finding that the material provisions of the alleged codicil were in Foxley's handwriting.

### INCORPORATION BY REFERENCE

Neb. Rev. Stat. § 30-2335 (Reissue 1995) provides that "[a]ny writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification." Having determined that the writings and obliterations on the photocopy of Foxley's will do not constitute a valid holographic codicil to Foxley's will, we hold that they cannot be incorporated into a validly executed will. We therefore find the county court erred in determining that Foxley made an incorporation by reference.

### CONCLUSION

Having determined that the handwritten changes on the photocopy of Foxley's will do not constitute a valid holographic codicil and may not be incorporated into her will by reference, we reverse.

REVERSED.