IN RE ESTATE OF GARY LEE MATTHEWS, DECEASED.
MELISSA MATTHEWS, PERSONAL REPRESENTATIVE OF THE
ESTATE OF GARY LEE MATTHEWS, DECEASED, APPELLANT,
v. DENISE NICOLE MATTHEWS-BAKER, APPELLEE.
702 N.W.2d 821
Filed August 30, 2005. No. A-04-022.

Thomas A. Fitch, of Fitch Law Firm, for appellant.

Shannon J. Samuelson, of Law Offices of Richard L. Alexander, for appellee.

IRWIN, SIEVERS, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Melissa Matthews appeals from an order construing a holographic will and determining that part of the estate passes pursuant to intestacy. The sole devise of the will stated: "I want Melissa to get all proceeds from the money that is left and from all contents in the house." The county court determined that the

will did not dispose of the decedent's interest in real estate being purchased under contract and occupied as the decedent's personal residence. We affirm.

## BACKGROUND

No appeal was taken from an earlier order admitting the decedent's holographic will to formal probate. See Neb. Rev. Stat. § 30-2328 (Reissue 1995) (defining holographic will). The instant proceeding commenced with Melissa's petition, as personal representative of the estate, for interpretation of the will and directions concerning distribution of assets of the estate. Denise Nicole Matthews-Baker filed an answer asserting that the holographic will does not address proceeds from the sale of the decedent's house.

The county court conducted an evidentiary hearing. In addition to receiving a copy of the will previously admitted to probate, the evidence included testimony and exhibits addressing the state of the decedent's relationship with Denise prior to the decedent's death.

By order entered November 24, 2003, the court determined that "the contents of the decedent's house should be sold and the proceeds distributed to Melissa . . . in accordance with the terms of the decedent's holographic will." The court also determined that the remainder of the decedent's estate should pass one-half to Melissa and one-half to Denise pursuant to the rules of intestacy. The court made no factual findings but set forth a detailed legal analysis.

## ASSIGNMENT OF ERROR

Melissa assigns that the county court erred in failing to interpret the decedent's will as devising to Melissa the proceeds from the sale of the decedent's house.

## STANDARD OF REVIEW

■ An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892 (2001).

■ When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ When a patent ambiguity exists in a will, a court must resolve such ambiguity as a matter of law. *In re Estate of Johnson*, 260 Neb. 91, 615 N.W.2d 98 (2000).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

■ The cardinal rule in construing a will is to ascertain and effectuate the intention of the testator if such intention is not contrary to the law. *Id.* By suggesting alternative meanings drawn from the face of the document, Melissa implicitly concedes that a patent ambiguity exists. Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). A patent ambiguity is one which exists on the face of an instrument. *Id.* Construction includes the process of determining the correct sense, real meaning, or proper explanation of an ambiguous term, phrase, or provision in a written instrument. *Id.*

■ To arrive at a testator's intention expressed in a will, a court must examine the will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meanings of words used in the will, and assume that the maker of the will understood words stated in the will. *In re Estate of Johnson, supra.*

Applying the ordinary rules of grammar, the devise sets forth two related provisions. One provision states: "I want Melissa to get all proceeds . . . from all contents in the house." The parties agree that this provision devises to Melissa all of the proceeds from a sale of the personal property within the decedent's house.

The other provision states: "I want Melissa to get all proceeds from the money that is left." As Melissa concedes, on its face, this provision is susceptible of more than one interpretation. Melissa asserts three possible interpretations of the phrase "proceeds from the money that is left" as follows: (1) "the liquid assets of the decedent's estate after the payment of all of his bills," (2) "the money left after a total liquidation of the decedent's estate," or (3) "a sale of the decedent's home." Brief for appellant at 7-8.

Melissa also requests that we consider the extrinsic evidence adduced at the hearing. Melissa argues that a court can consider evidence outside the will, not for the purpose of interpreting the will, but, rather, for the purpose of considering the circumstances under which it was made. Melissa cites two cases in support of this proposition. She first cites *Allemand v. Weaver*, 208 Neb. 618, 305 N.W.2d 7 (1981), for the proposition that the object and purpose of the court is to carry out and enforce the true intention of the testator as shown by the will itself, in the light of attendant circumstances under which it was made. An examination of that case, however, reveals that the Nebraska Supreme Court therein considered a patent ambiguity, which it resolved from within the four corners of the will and without consideration of extrinsic evidence.

Melissa also cites *In re Estate of Dimmitt*, 141 Neb. 413, 3 N.W.2d 752 (1942), for the proposition that declarations of the testator may be admissible, not to show direct expressions of his or her intentions, but to show the facts and circumstances surrounding the situation under which he or she executed the will. However, that case concerned whether a separate document—an undelivered deed of real estate—was incorporated into and made a part of the will by specific language therein. In that case, the Supreme Court was faced with determining under what conditions an extrinsic document may be incorporated into a will. In the case before us, the will purports to be complete on its face and makes no reference to any extrinsic document. We find *In re Estate of Dimmitt* to be distinguishable from the case before us.

More recently, the Nebraska Supreme Court has stated that parol evidence is inadmissible to determine the intent of a testator as expressed in his or her will, unless there is a latent ambiguity therein which makes his or her intention obscure or uncertain. *Scriven v. Scriven*, 153 Neb. 655, 45 N.W.2d 760 (1951). A latent ambiguity exists in a will when a beneficiary is erroneously described, where no such beneficiary has ever existed as so described, or when two or more persons or organizations answer the description imperfectly. *In re Estate of Bernstrauch*, 210 Neb. 135, 313 N.W.2d 264 (1981). This court has also contrasted a patent ambiguity, where the same word in a will has two meanings discernible from the face of the will

itself, with a latent ambiguity, where a word has two meanings but only when extrinsic evidence is brought to bear. See *In re Estate of Smatlan*, 1 Neb. App. 295, 501 N.W.2d 718 (1992). Because the ambiguity in the instant case is patent, we reject Melissa's contention that we may consider extrinsic evidence and we confine our analysis to the four corners of the will.

Melissa also argues that normal rules of construction may not necessarily apply to holographic wills and that a construing court should take extra steps to determine or ascertain the intention of the testator. In making this argument, Melissa relies upon *Roberts v. Snow Redfern Memorial Foundation*, 196 Neb. 139, 242 N.W.2d 612 (1976). We believe Melissa draws more from *Roberts* than its language and facts support. Rather, we believe the Nebraska Supreme Court succinctly set forth the proper approach in *Dumond v. Dumond*, 155 Neb. 204, 207, 51 N.W.2d 374, 375-76 (1952), where the court stated:

> In determining the intent of the testator when he [or she] used the controverted words, the court should place itself in the shoes of the testator, ascertain his [or her] intention, and enforce it. In so doing, it is important to remember at all times that the testator was unskilled in the field of will drafting.

With these principles in mind, we now consider the ambiguous provision, employing the generally accepted literal and grammatical meanings of the words used in the statement "I want Melissa to get all proceeds from the money that is left." Examination of the phrase discloses three key words: "proceeds," "money," and "left."

The word "proceeds" has been defined as (1) "that which results or accrues," (2) "the total sum derived from a sale or other transaction," or (3) "the profits or returns from a sale, investment, etc." Webster's Encyclopedic Unabridged Dictionary of the English Language 1147 (1989). Although there are numerous definitions of the word "money," we believe the most apt definition in the present circumstances is "any circulating medium of exchange, including coins, paper money, and demand deposits." *Id.* at 924. Further, in the present context, the word "left" clearly means "leftover" or "remaining from a larger amount" after the decedent's death. *Id.* at 818.

We do know that the decedent distinguished between "proceeds from the money that is left" and "proceeds . . . from all contents in the house." We therefore reject the interpretation of the former phrase to include all property of the estate, because the decedent clearly treated the contents of the house separately and could not have intended the contested phrase to comprise all property of the estate, including those contents.

We also reject an interpretation that the phrase in question includes proceeds from the sale of the house. The other phrase in the decedent's will establishes that the decedent understood the concept of his "house" as a form of property. The decedent's will addressed two types of property that he "want[ed] Melissa to get." The language of the contested phrase does not extend so far as Melissa contends. The presumption that one making a will intended to fully dispose of his or her estate by that document does not overcome the rule requiring an express provision or necessary implication to disinherit one's heirs. *In re Estate of Corrigan*, 218 Neb. 723, 358 N.W.2d 501 (1984). The contested phrase fails to meet that requirement.

Melissa requests us to construe the provision as devising to her the proceeds from the sale of the decedent's house. The question she presents does not require us to determine the precise contours of the contested phrase. Our rejection of her interpretation is sufficient to decide the appeal.

## CONCLUSION

Because we reject Melissa's contention regarding the proper interpretation of the decedent's will, Melissa's assignment of error lacks merit. We therefore affirm the order of the county court.

AFFIRMED.