Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2017 09:14 AM CDT

In re Estate of Cora H. Etmund, deceased.
Jean Holubar et al., appellants, v. Cheryl A. Brown,
Personal Representative of the Estate of
Cora H. Etmund, deceased, appellee.

___ N.W.2d ___

Filed August 11, 2017.    No. S-16-804.

1. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of
an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When
reviewing a judgment for errors appearing on the record, the inquiry is
whether the decision conforms to the law, is supported by competent
evidence, and is neither arbitrary, capricious, nor unreasonable.
2. **Decedents' Estates: Wills: Trusts: Judgments: Appeal and Error.**
The interpretation of the words in a will or a trust presents a question of
law. When reviewing questions of law in a probate matter, an appellate
court reaches a conclusion independent of the determination reached by
the court below.
3. **Decedents' Estates: Appeal and Error.** The probate court's factual
findings have the effect of a verdict and will not be set aside unless
clearly erroneous.
4. **Decedents' Estates: Wills: Intent.** The cardinal rule concerning a
decedent's will is the requirement that the intention of the testator shall
be given effect, unless the maker of the will attempts to accomplish a
purpose or to make a disposition contrary to some rule of law or public policy.
5. ____: ____: ____. To arrive at a testator's intention expressed in a
will, a court must examine the decedent's will in its entirety, consider
and liberally interpret every provision in a will, employ the generally
accepted literal and grammatical meaning of words used in the will,
and assume that the maker of the will understood words stated in
the will.

6. **Wills.** When language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible.
7. **Wills: Words and Phrases.** Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings.
8. **Uniform Commercial Code: Sales.** The issue of whether a sale was commercially reasonable under the Uniform Commercial Code is a question of fact for the fact finder to decide.
9. **Trial: Witnesses: Evidence: Appeal and Error.** In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.

Appeal from the County Court for Lancaster County: Holly J. Parsley, Judge. Affirmed.

Daniel E. Klaus and Sheila A. Bentzen, of Rembolt Ludtke, L.L.P., for appellants.

Reginald S. Kuhn and Christina L. Usher, of Mattson Ricketts Law Firm, for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.
## I. INTRODUCTION
This case involves a dispute as to whether the personal representative of the estate of Cora H. Etmund (Etmund), deceased, should be removed pursuant to Neb. Rev. Stat. § 30-2454 (Reissue 2016).

Etmund's will directed the personal representative of her estate, Cheryl A. Brown, to provide the current farm tenant, Norris Talcott, with the first opportunity to purchase the subject property "under commercially reasonable terms and conditions as he and [Etmund's] personal representative may agree."

Brown hired a certified appraiser, who valued the subject property at $785,859 based on its agricultural use. Brown thereafter entered into a purchase agreement for the subject property with the current farm tenant for $900,000. Jean Holubar; Paul Etmund; Dale Etmund, Sr.; and Diane Geistlinger (petitioners), all of whom are devisees under the will, argue that a sale at this price is not in the best interests of the estate because, according to their appraiser, the value of the land is $1,457,000 based on the "highest and best use" for the subject property as a residential development with interim agricultural use.[1] Petitioners thereafter filed a petition for removal.

The county court denied petitioners' petition for removal. Petitioners appeal. We affirm.

## II. BACKGROUND

### 1. Factual Background

Etmund died on March 2, 2015. Etmund had a validly executed will dated May 24, 2013. On March 17, 2015, Brown filed an application for informal probate of will and appointment of personal representative. Brown requested that she be appointed to serve as personal representative. That same day, the county court appointed Brown as personal representative of the estate.

Etmund's will states in relevant part:

A. I nominate and appoint . . . Brown as personal representative of my estate. . . .

B. My personal representative shall have full power in her discretion to do any and all things necessary for the complete administration of my estate, including the power to sell at public or private sale, without order of court, any real or personal property belonging to my estate, and to compromise or otherwise settle or adjust

---

[1] Brief for appellants at 14.

any and all claims, charges, debts, and demands whatever against or in favor of my estate as fully as I could do if living.

C. I direct my personal representative to provide my current farm tenant, . . . Talcott, the first opportunity to purchase the real estate owned by me under commercially reasonable terms and conditions as he and my personal representative may agree, it being my desire that . . . Talcott be given the opportunity to purchase said real estate before any other. If . . . Talcott does not wish to purchase said real estate or if he and my personal representative are unable to come to mutual terms of agreement for its sale, then my personal representative is directed to sell said real estate either by private or public sale.

At the time of Etmund's death, the subject property was used as agricultural land and zoned as agricultural. The personal representative hired an appraiser to conduct an appraisal of the subject property. The appraiser valued the property at $785,859, based on its agricultural use. Brown testified that after receiving the appraisal price, she negotiated the purchase price with Talcott. After thinking about it for "a couple days," Talcott accepted the offer. On November 18, 2015, Brown, acting in her capacity as personal representative, entered into an agreement for sale of the subject property with Talcott and his wife for a price of $900,000.

On January 7, 2016, pursuant to Neb. Rev. Stat. § 30-2450 (Reissue 2016) of Nebraska's Uniform Probate Code, petitioners sought an order restraining the personal representative from closing on the sale of the real estate. Petitioners contended that the agreement provided for a sale price that was "significantly below fair market value."

Following a hearing, on January 13, 2016, the county court filed an order restraining the personal representative, stating that the sale would "unreasonably jeopardize the interest of

. . . Petitioners" and restraining Brown from closing on the sale until March 1. Petitioners were given until March 1 to complete their investigation as to a commercially reasonable sale.

Pursuant to the court's order, petitioners hired a licensed real estate appraiser to do an appraisal of the subject property. Petitioners' appraiser testified that the total value of the property was $1,457,000 and determined that the "highest and best use [was] residential development with interim agricultural use." Petitioners filed a certification of completion of investigation as to commercially reasonable sale and stated that according to their appraisal report, the subject property had a value that exceeded the price at which Brown agreed to sell it by $557,000.

Petitioners also filed a petition for formal probate of the will, determination of heirs, and appointment of successor copersonal representatives after removal of the personal representative; for accounting by personal representative; and for accounting by agent under power of attorney. The petition stated that "it is in the best interests of the Estate that Dale Etmund, Sr. and Jean Holubar be appointed as Successor Co-Personal Representatives of the Estate." Following a hearing, the county court denied the petition. Petitioners appeal.

## 2. TESTIMONY IN SUPPORT OF APPRAISALS

### (a) Appraiser for Petitioners

The appraiser hired by petitioners testified that the "highest and best use analysis is the cornerstone of any appraisal." Using this analysis, petitioners' appraiser testified that the highest and best use of the subject property was residential development with interim agricultural use, because he "saw that there was potential there." He reasoned, "[Y]ou can . . . divide [the] property by 20 acres, . . . clump those together in

what is called a Community Unit Plan, . . . [build] houses in one area, and then the rest of it is then restricted use until . . . you would have a zoning change." He stated that he had seen this approach done "multiple times" in the corridor in which the property is located.

However, in the report he gave to petitioners, the appraiser cited to a map in evidence entitled "2040 Priority Growth Areas." In explaining the map, petitioners' appraiser stated that "[t]he tiers, as they are laid out, [are] where [the Lancaster County Engineer] anticipate[s] . . . the city could potentially grow. This is completely based on drainage basins for sewer." The subject property is in "Tier II," which, according to the accompanying text on the map, indicates that the city antici- pates development will occur in approximately 2060, based on when the sewer is projected to reach the property. In his report, petitioners' appraiser stated that based on other devel- opments in the area, including the projected construction of a "South Beltway," he "estimate[d] the city will expand to the subject property and the subject property will include city services much sooner than 2060." However, the report does not specify by which year that might occur. There was no testi- mony explaining the discrepancy in the estimates of when city services will be available.

As part of his analysis, petitioners' appraiser also looked at comparable sales in the surrounding area, but he admitted that some of these sales were in "probably better areas." He further testified, "I had the high end, I had the low end, and somewhere in the middle, . . . and it gives me a good idea of where I believe it should fall."

Petitioners' appraiser incorporated into his testimony of the total valuation the valuation of the house and surrounding 4.59 acres performed by a certified appraiser at the same appraisal company. By viewing comparable sales, this appraiser valued the house and surrounding 4.59 acres at $110,000 and charac- terized the home as being in "fair condition."

### (b) Appraiser for Personal Representative

The appraiser hired by Brown to appraise the property was a licensed general certified appraiser, real estate broker, and crop insurance agent. In reaching his appraisal value, Brown's appraiser testified that he inspected the property and "used the three approaches to value: the sales comparison approach, the income approach, and the cost approach." He determined that "the highest and best use is agriculture, dry land row crop reduction, and cattle grazing." Brown's appraiser further stated that "another highest and best use of the subject property was rural residential acreage use" for the part of the property with a building site and improvements. Brown's appraiser testified that he assigned a value to the land for agricultural use and that he did not consider himself competent under the Uniform Standards of Professional Appraisal Practice to appraise property for development.

Brown's appraiser testified that he considered other uses of the property besides agriculture, but explained:

[A]s I looked at it from a feasible standpoint, I felt what the — what a potential buyer would pay for land . . . it wasn't financially feasible because by the time you do the development cost in it, and then I researched the market to see what three- to five-acre tracts of land were selling for, there wasn't enough profit margin in my opinion for a developer to take that risk.

In his appraisal, Brown's appraiser relied on comparable sales with a similar type of cropland soil quality. He characterized the home as "poor condition," noting that it had been vacant since about 2009. He also estimated the building site to be 5 acres, valued the building and site improvements at $83,450, and stated that in his opinion, the value of the subject property was $785,859. He further testified that he conducted the appraisal in accordance with the Uniform Standards of Professional Appraisal Practice.

## III. ASSIGNMENT OF ERROR

Petitioners assign, restated, that the county court erred in finding that petitioners did not show cause for removal of Brown as personal representative of the estate.

## IV. STANDARD OF REVIEW

[1] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[2] The interpretation of the words in a will or a trust presents a question of law. When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[4]

[3] The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.[5]

## V. ANALYSIS

Petitioners contend that Brown failed to sell the property "under commercially reasonable terms and conditions" as directed by the will, and thus removal is in the best interests of the estate. Petitioners argue that the will directs Brown "to arrive at a commercially reasonable price or value, which, in the case of real estate, means valuing land at its highest and best use"[6] of commercial developmental property with interim agricultural use.

---

[2] *In re Estate of Nemetz*, 273 Neb. 918, 735 N.W.2d 363 (2007).

[3] *Id.*

[4] *In re Estate of Shell*, 290 Neb. 791, 862 N.W.2d 276 (2015).

[5] *In re Estate of Webb*, 20 Neb. App. 12, 817 N.W.2d 304 (2012).

[6] Brief for appellants at 10.

Section 30-2454(b) provides that "[c]ause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative . . . has mismanaged the estate or failed to perform any duty pertaining to the office."

Section 30-2450(a) provides in relevant part:

> On petition of any person who appears to have an interest in the estate, the court by temporary order may restrain a personal representative from performing specified acts of administration, disbursement, or distribution, or exercise of any powers or discharge of any duties of his office, or make any other order to secure proper performance of his duty, if it appears to the court that the personal representative otherwise may take some action which would jeopardize unreasonably the interest of the applicant or of some other interested person. Persons with whom the personal representative may transact business may be made parties.

And Neb. Rev. Stat. § 30-2464(a) (Reissue 2016) states that a personal representative is "under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this code, and as expeditiously and efficiently as is consistent with the best interests of the estate."

[4,5] The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy.[7] To arrive at a testator's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in a will, employ the generally accepted literal and grammatical

---

[7] *In re Estate of Ritter*, 227 Neb. 641, 419 N.W.2d 521 (1988).

meaning of words used in the will, and assume that the maker of the will understood words stated in the will.[8]

### 1. "COMMERCIALLY REASONABLE"

Rather than address the term "commercially reasonable" in a vacuum, as petitioners' argument suggests, this court must examine Etmund's will in its entirety. The phrase "commercially reasonable terms" is used in the will to refer to negotiations for sale of the property between the personal representative and Talcott.

[6,7] When language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible.[9] Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings.[10]

According to Etmund's will, Brown, as personal representative, has "full power in her discretion . . . to sell at public or private sale, without order of court, any real or personal property belonging to [Etmund's] estate."

As mentioned above, Talcott is a current tenant who farms the property at issue. According to Brown's testimony, Etmund inherited the property from a brother in 2002. Talcott has been one of the farm tenants on the property since 1993, when Etmund's brother owned the property. The will directs the personal representative to provide the "current farm tenant, . . . Talcott," with the first opportunity to purchase the property. Such characterization of Talcott in the will indicates that Etmund's intent was to provide Talcott an opportunity to continue to pursue his livelihood of farming on the property, which he had been doing prior to Etmund's ownership of the property.

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

The will further directs that "Talcott be given the opportunity to purchase said real estate before any other" and states, "If . . . Talcott does not wish to purchase said real estate or if he and my personal representative are unable to come to mutual terms of agreement for its sale, then my personal representative is directed to sell said real estate either by private or public sale." Therefore, other passages in the will provide a basis for the county court's finding that "commercially reasonable terms and conditions" are between the personal representative and the tenant farmer.

While, as petitioners argue, the will does not explicitly state that the property must be sold as agricultural property, the testator's intent of such a sale can be discerned from the rest of the sentence quoted above and the sentences following it. In contrast, nowhere in the will does Etmund state that she desires the highest price or the best use for the property; nor does the rest of the will support that reading.

Petitioners cite *In re Estate of Webb*[11] and *Reeves v. Associates Financial Services Co., Inc.*,[12] for the proposition that a personal representative should be removed if he or she attempts to sell the decedent's home at a price lower than the appraiser's value. We find that both of those cases involve different factual scenarios and are not applicable to the current set of facts.

[8,9] Furthermore, this court has held that the issue of whether a sale was commercially reasonable under the Uniform Commercial Code is a question of fact for the fact finder to decide.[13] In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the

---

[11] *In re Estate of Webb, supra* note 5.

[12] *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976).

[13] See *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990).

weight to be given their testimony. An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.[14]

In this case, the county court had to determine whether the price of $900,000 was commercially reasonable for the property based on two competing appraisals. The county court was presented with the appraisals, weighed the evidence, evaluated the credibility of the witnesses, and found Brown's appraiser to be more credible.

In light of the surrounding language in the will, its phrase "commercially reasonable terms" could not reasonably be interpreted as meaning the "highest and best" use of residential development.[15] As this is a question of law, we conclude that the term "commercially reasonable" as used in the will is not susceptible to two reasonable interpretations or meanings and is thus not ambiguous. Furthermore, we hold that the county court did not clearly err in its factual findings that "commercially reasonable" was not ambiguous and that Brown sold the property "under commercially reasonable terms and conditions" to Talcott in selling it at a price based on the appraisal by a certified appraiser who valued the property as agricultural use.

## 2. Personal Representative's
### Discretion With Respect
#### to Appraisals

We turn next to petitioners' contention that Brown's appraiser was not qualified to appraise the land at issue, and by extension that Brown should be removed as personal representative for hiring that appraiser and adopting his appraisal.

Neither party contends that the purpose of the will is contrary to a rule of law or public policy. As such, this court is

---

[14] *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

[15] See brief for appellants at 10.

concerned only with giving effect to the intent of the testator.[16] Etmund's will gives broad discretion to Brown as personal representative. Brown employed both a general certified appraiser and an attorney to advise her in the performance of her administrative duties and acted upon their recommendations. This she is allowed to do. Neb. Rev. Stat. § 30-2476 (Reissue 2016) provides that except when otherwise restricted by the will, the personal representative, "acting reasonably for the benefit of the interested persons," may employ persons to advise and may "act without independent investigation upon their recommendations."[17] And Neb. Rev. Stat. § 30-2468 (Reissue 2016) explicitly states that the personal representative may employ a "qualified and disinterested appraiser" to determine the fair market value of any asset of value that may be subject to reasonable doubt.

Petitioners contend that the admission by Brown's appraiser that he was not qualified to appraise development property meant he used a "limited approach" in his appraisal, thus calling into question whether he was qualified to appraise the property.[18]

As noted above, the property at issue was used as agricultural land by the current tenant and is zoned as agricultural. Brown's appraiser held a general certified appraiser's license, a real estate broker's license, and a crop insurance agent's license. He had significant experience appraising farms, particularly farms in Lancaster County. Brown's appraiser testified that he considered whether the property could be sold for residential developmental use, but determined it was not "financially feasible" based on his analysis of the profit margin for a developer. He did not appraise the land for residential development. His testimony that he was not qualified to

---

[16] See *In re Estate of Ritter, supra* note 7.

[17] § 30-2476(21).

[18] Brief for appellants at 15.

appraise development property does not make him unqualified to appraise the property at issue.

Brown's appraiser's licensing, experience, and testimony indicate that he was qualified to appraise property he deemed agricultural. Furthermore, there is no testimony to indicate that Brown's appraiser had an interest in the estate. Thus, Brown's appraiser was a qualified and disinterested appraiser, and Brown was entitled to act without independent investigation into his appraisal.

The county court applied the language of § 30-2454(b) and found that no cause existed to remove Brown as personal representative. Based on an examination for error appearing on the record, we conclude that the county court's ruling conformed to the law, was supported by competent evidence, and was neither arbitrary, capricious, nor unreasonable. We further hold that the county court was not clearly erroneous in making its factual determination of the value of the property.

Petitioners' assignment of error is without merit.

### VI. CONCLUSION

For the reasons stated above, we affirm.

AFFIRMED.