Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/10/2018 08:14 AM CDT

- 722 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

In re Estate of Brian L. Tiedeman, deceased.
Dustin Lovorn, Special Administrator of the Estate
of Brian L. Tiedeman, deceased, appellant and
cross-appellee, v. Sue Ann Brethouwer, appellee
and cross-appellant, and David L. Clark, Jr., and
Sheila G. Casares, Copersonal Representatives
of the Estate of Jody Clark, deceased,
appellees and cross-appellants.

___ N.W.2d ___

Filed April 10, 2018.    Nos. A-16-887, A-16-933.

1. **Decedents' Estates: Wills: Trusts: Judgments: Appeal and Error.**
   The interpretation of the words in a will or a trust presents a question of
   law. When reviewing questions of law in a probate matter, an appellate
   court reaches a conclusion independent of the determination reached by
   the court below.
2. **Summary Judgment: Jurisdiction: Appeal and Error.** When review-
   ing cross-motions for summary judgment, an appellate court acquires
   jurisdiction over both motions and may determine the controversy that
   is the subject of those motions; an appellate court may also specify the
   issues as to which questions of fact remain and direct further proceed-
   ings as the court deems necessary.
3. **Wills: Intent: Words and Phrases.** Material provisions of a will are
   defined as those provisions which express donative and testamen-
   tary intent.
4. ____: ____: ____. Donative intent relates to words reflecting specific
   bequests to particular beneficiaries, and testamentary intent concerns
   whether the document was intended to be a will.
5. **Wills: Words and Phrases.** No particular words or conventional forms
   of expression are necessary to enable one to make an effective testamen-
   tary disposition of his or her property.
6. ____: ____. When construing the meaning of words in a document,
   the process requires determining the correct sense, real meaning, or

- 723 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

proper explanation of an ambiguous term, phrase, or provision in a written instrument.

7. ____. ____. Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings.

8. **Parol Evidence: Wills: Intent.** Parol evidence is inadmissible to determine the intent of a testator as expressed in his or her will, unless there is a latent ambiguity therein which makes his or her intention obscure or uncertain.

9. **Wills: Words and Phrases.** A patent ambiguity is an ambiguity appearing on the face of the instrument, whereas a latent ambiguity is one outside the will.

10. **Wills: Intent.** A patent ambiguity must be removed by interpretation according to legal principles, and the intention of the testator must be found in the will.

11. **Wills.** Patent ambiguities are resolved from within the four corners of the will and without consideration of extrinsic evidence.

12. **Wills: Words and Phrases.** Where in a will there is such a patent ambiguity resulting from the use of the words and nothing appears within its four corners to resolve or clarify the ambiguity, the words must be given their generally accepted literal and grammatical meaning.

13. **Wills.** A latent ambiguity exists when the testator's words are susceptible of more than one meaning, and the uncertainty arises not upon the words of the will as looked at themselves, but upon those words when applied to the object or subject which they describe.

14. ____. A latent ambiguity arises when a beneficiary is erroneously described, where no such beneficiary has ever existed as the one so described, or when two or more persons or organizations answer the description imperfectly.

15. **Wills: Evidence.** Extrinsic evidence is admissible both to disclose and to remove the latent ambiguity of the will.

16. ____: ____. A patent ambiguity is a case where the same word in a will has two meanings discernible from the face of the will itself, whereas a latent ambiguity is a case where the word has two meanings, but only when extrinsic evidence is brought to bear.

17. **Wills.** The law will not suffer an heir to be disinherited upon conjecture.

18. **Wills: Intent.** Although a testator may disinherit an heir, the law will execute that intention only when it is put in a clear and unambiguous shape.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

- 724 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

James L. Haszard, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

J.L. Spray and Ryan K. McIntosh, of Mattson Ricketts Law Firm, for appellee Sue Ann Brethouwer.

Dale D. Dahlin, P.C., L.L.O., for appellees David L. Clark, Jr., and Sheila G. Casares.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Following Brian L. Tiedeman's death, his nephew Dustin Lovorn filed a petition to have Tiedeman's purported holographic will admitted to probate in the county court for Lancaster County. Sue Ann Brethouwer and Jody Clark, two of Tiedeman's sisters, filed separate objections to Lovorn's petition, and the case was transferred to the district court for Lancaster County. The district court granted partial summary judgment in favor of Lovorn as to the document in question being written by Tiedeman, but granted summary judgment in favor of Brethouwer and Clark as to the document not being made with the requisite testamentary intent to be a valid holographic will. Lovorn appeals the district court's decision, and Brethouwer and Clark cross-appeal. We affirm.

## BACKGROUND

We initially note that while this appeal was pending, a suggestion of death was filed notifying the court that Clark died on December 27, 2017. On January 19, 2018, a stipulation and joint motion for revivor was filed by the parties pursuant to Neb. Rev. Stat. § 25-1401 et seq. (Reissue 2016), indicating that David L. Clark, Jr., and Sheila G. Casares (son and daughter of Clark) were appointed and qualified as copersonal representatives of Clark's estate. The parties agreed the action and interests of Clark should proceed in the names of her copersonal representatives. The stipulation and joint motion

- 725 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

for revivor was sustained by order of this court entered on February 1, 2018; however, this opinion will continue to refer to Clark by her name.

Tiedeman died on February 24, 2015. His estate is comprised primarily of a farm operation and has a gross value of approximately $4 million. Before his death, Tiedeman managed the farm operation with Lovorn. Tiedeman's only heirs at law were his three sisters: Brethouwer, Clark, and Lovorn's mother. Lovorn filed a petition in county court on March 4 to have the purported holographic will admitted into formal probate. We set forth the handwritten document below to reflect, as best possible, its use of spacing and capitalization, and its spelling:

> 5-22-14
>
> I Brian L Tiedeman want all my
> All Property to Dustin Lovorn
> I here by attend to change my will.
>
> [Signature]

The county court subsequently appointed Lovorn special administrator of Tiedeman's estate in order to manage the farming operation to prevent waste.

Brethouwer filed an objection to the petition for formal probate of the purported holographic will and transferred the action to the district court. Her objection alleged as follows: (1) The purported will does not express testamentary intent, (2) Tiedeman did not have testamentary capacity at the time of the purported will's execution, (3) Tiedeman lacked mental capacity to execute a will, (4) Tiedeman was under duress from Lovorn when the purported will was created, and (5) the purported will is the product of undue influence exercised by Lovorn over Tiedeman. Clark filed a separate objection, alleging the document in question (1) was not executed properly under Nebraska statutes governing the execution of a will, (2) is not a valid holographic will, (3) does not express testamentary intent, (4) is not in Tiedeman's handwriting, (5) was not made with testamentary intent at the time of its creation, (6) is

- 726 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

the product of undue influence by Lovorn over Tiedeman, (7) was created while Tiedeman was under duress from Lovorn, (8) was created at a time when Tiedeman did not have testamentary capacity, (9) resulted from fraud by Lovorn, and (10) was not intended to be a will and was the result of mistake by Tiedeman. Lovorn filed separate answers to both objections denying all of the allegations by both Brethouwer and Clark listed above.

Brethouwer then filed a motion for summary judgment, requesting judgment as a matter of law that the purported will "did not express sufficient testamentary intent as required by Neb. Rev. Stat. § 30-2328 (Reissue 2008)." Clark subsequently joined Brethouwer's motion for summary judgment. Lovorn filed a motion for partial summary judgment, requesting judgment as a matter of law that (1) the purported will was in Tiedeman's handwriting and (2) the purported will "expressed sufficient testamentary intent as required by Neb. Rev. Stat. §30-2328."

At the hearing on the motions for summary judgment, Lovorn offered the affidavit of attorney Patrick D. Timmer, in which Timmer explained the circumstances of the creation of the purported will. Counsel for Brethouwer and Clark made objections to the affidavit, including arguments related to extrinsic and parol evidence. The court took the offer of the affidavit under advisement. And although counsel for Clark challenged the accuracy of the affidavit based on alleged prior inconsistent reporting by Timmer as to whether the purported will was drafted by Tiedeman at home or at Timmer's office, this was only raised by argument and not through any evidence submitted at the hearing.

The district court issued an order on August 15, 2016. In that order, the court sustained objections to Timmer's affidavit as to paragraphs 10, 12, and 13, but received the remainder of the affidavit. The court observed that parol evidence was not admissible to determine the intent of a testator as expressed in his or her will unless there is a latent ambiguity therein which

- 727 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

makes his or her intention obscure or uncertain. The court further observed that with regard to the purported will in this case, "it is apparent that no latent ambiguity exists." Concluding it could not consider extrinsic evidence to determine Tiedeman's testamentary intent, the court sustained objections to the three paragraphs noted above.

The three excluded paragraphs of Timmer's affidavit averred: Tiedeman told Timmer that he wanted to change his will to give all of his property to Lovorn, but that Timmer did not have time to discuss a new will with him; Timmer handed Tiedeman a piece of paper and told him to write, "'I, Brian L. Tiedeman, want all my property to go to Dustin Lovorn and I hereby intend to change my will'"; and Timmer told Tiedeman "to write 'I hereby intend to change my will' to show his intention as to the purpose of the document."

In relevant part, the admitted portion of Timmer's affidavit averred: Timmer, an attorney, had worked with Tiedeman "on a number of occasions" with regard to the administration of Tiedeman's father's trust (Tiedeman was the trustee); Timmer was scheduled to meet with Tiedeman on May 22, 2014, for an allotted 45 minutes, and at that time, Tiedeman signed trust administration documents and powers of attorney appointing Lovorn as Tiedeman's attorney in fact; during this meeting, Timmer told Tiedeman to schedule another appointment to discuss a new will, but he explained to Tiedeman that in the meantime, he could "do what is called a holographic will" and told him he could create a document in his own handwriting that is signed and dated; Timmer personally witnessed Tiedeman writing on paper given to him and signing the document, and this is the document that has been offered for probate in Tiedeman's estate; Tiedeman did not leave the conference room during the course of the meeting and "the writing of the will"; Lovorn did not accompany Tiedeman to this meeting, nor did Lovorn speak to Timmer about "the will" until after Tiedeman's death; Tiedeman left "the holographic will" with Timmer, which he placed in Tiedeman's estate planning

- 728 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

file; Tiedeman told Timmer that Lovorn was already a joint owner on some of Tiedeman's accounts or that he was planning to add him to accounts; and Timmer stated that he was aware on May 22 that Tiedeman had an existing will prepared by another attorney, but that Timmer did not know the whereabouts of that will.

With that evidence, the district court first considered whether the purported holographic will was in Tiedeman's handwriting. The court stated that Timmer's affidavit "clearly shows that Timmer witnessed [Tiedeman] write and sign the document, he then left the document with Timmer, who placed it in [Tiedeman's] estate planning file." Since the court found there were no genuine issues of material fact regarding this issue, it granted partial summary judgment in favor of Lovorn, finding that the "purported holographic will is in the handwriting of [Tiedeman]."

The next issue considered by the district court was whether the purported holographic will expressed sufficient testamentary intent. Based on the evidence admitted, the court granted summary judgment in favor of Brethouwer and Clark, finding that "the writing fails to express sufficient testamentary and donative intent." It was the court's opinion that the words expressed Tiedeman's intent to create a new will at a future date. In sum, the court stated that "the purported holographic will . . . does not contain sufficient material provisions expressing testamentary and donative intent and cannot be legally recognized as a valid holographic will."

The district court ordered the matter transferred back to the county court "to carry the final decision to judgment and execution."

Lovorn filed a motion for the district court to set a supersedeas bond pursuant to Neb. Rev. Stat. § 30-1601 (Reissue 2016). The court entered an order stating "a supersedeas bond is required by . . . Lovorn to appeal this matter and the amount of said bond is $400,000.00." Lovorn then filed his appeal from the district court's order granting summary judgment

- 729 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

in favor of Brethouwer and Clark; it was docketed as case No. A-16-887.

Lovorn also filed a motion with the district court to reconsider the amount of the supersedeas bond and to extend time to file the bond. Lovorn's motion included an affidavit from the president of a bond company, which affidavit indicated the bond company was requiring $400,000 in collateral, plus a $6,000 fee per year, for a $400,000 bond. Lovorn claimed that he did not have sufficient assets to provide such collateral and that the primary asset in the estate is farm ground, which cannot be destroyed or removed, so a lesser bond would protect the beneficiaries. Lovorn's affidavit stated he owned vehicles and miscellaneous assets totaling $68,753, plus a one-half interest in the farm operation's machinery ($152,440) secured by a bank and for which ownership is "likely disputed."

The district court overruled Lovorn's motion for reconsideration and for an extension of time to file a bond. Lovorn then filed a motion with this court to review the district court's supersedeas bond amount and for leave to file his bond out of time in response to the court's decision to overrule his motion for reconsideration; it was filed as a separate appeal (case No. A-16-933). Brethouwer and Clark filed separate motions for summary disposition with this court, both arguing we lacked jurisdiction to hear Lovorn's appeal based on his failure to post the $400,000 supersedeas bond set by the district court. Those motions were overruled, and we entered an order setting the bond amount at $100,000, which Lovorn subsequently posted.

The appeals in cases Nos. A-16-887 and A-16-933 have been consolidated for briefing and disposition.

Although not relevant to this appeal, we note that following the district court's order regarding summary judgment, Clark filed a petition in the county court to have a purported lost will admitted to formal probate and nominated herself as personal representative. The petition included the purported

- 730 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

copy of a lost will which was unsigned by Tiedeman. Lovorn and his mother both filed objections to Clark's petition to have the lost will admitted to probate based on Lovorn's pending appeal. The county court scheduled a hearing date; however, our record does not show any further information.

## ASSIGNMENTS OF ERROR

Lovorn assigns nine errors, which we consolidate and restate as follows: The district court erred (1) in finding Brethouwer and Clark were entitled to judgment as a matter of law that the purported holographic will did not contain sufficient testamentary intent, (2) in failing to consider extrinsic evidence in determining the testamentary intent of the purported will, and (3) in setting the supersedeas bond in the amount of $400,000.

Brethouwer assigns on cross-appeal that the district court erred by receiving any part of Timmer's affidavit into evidence.

Clark assigns on cross-appeal that the district court erred (1) by receiving any part of Timmer's affidavit into evidence and (2) by finding the purported will was in Tiedeman's handwriting. She also assigns error to this court for reducing the amount of the supersedeas bond.

## STANDARD OF REVIEW

[1] The interpretation of the words in a will or a trust presents a question of law. When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below. *In re Estate of Etmund*, 297 Neb. 455, 900 N.W.2d 536 (2017).

[2] When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).

- 731 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

## ANALYSIS

*Not Valid Holographic Will on Its Face.*

The district court concluded that the document offered as Tiedeman's holographic will was in Tiedeman's handwriting, but that the words "I Brian L Tiedeman want all my All Property to Dustin Lovorn I here by attend to change my will" did not "express sufficient testamentary and donative intent" to qualify as a holographic will. Rather, the court concluded that the words expressed only "Tiedeman's intent to create a new will at a future date."

Like the district court, we begin our analysis by setting forth the statutory requirements for a holographic will. Pursuant to Neb. Rev. Stat. § 30-2328 (Reissue 2016):

An instrument which purports to be testamentary in nature but does not comply with section 30-2327 is valid as a holographic will, whether or not witnessed, if the signature, the material provisions, and an indication of the date of signing are in the handwriting of the testator and, in the absence of such indication of date, if such instrument is the only such instrument or contains no inconsistency with any like instrument or if such date is determinable from the contents of such instrument, from extrinsic circumstances, or from any other evidence.

[3,4] The district court found the purported holographic will did "not contain sufficient material provisions," which § 30-2328, set forth above, clearly requires. Material provisions of a will are defined as those provisions which express donative and testamentary intent. See *In re Estate of Foxley*, 254 Neb. 204, 575 N.W.2d 150 (1998). The district court cited to *Simonelli v. Chiarolanza*, 355 N.J. Super. 380, 810 A.2d 604 (2002), which also considered a purported holographic will, to explain that testamentary intent concerns whether the document was intended to be a will and donative intent relates to words reflecting specific bequests to particular beneficiaries. In *Simonelli*, the document at issue stated, "'In case of death-goes to Lisa Simonelli.'" 355 N.J. Super. at

- 732 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

384, 810 A.2d at 606. The New Jersey court stated that its governing statute for a holographic will required "'material provisions [to be] in the handwriting of the testator,'" *id.* at 385, 810 A.2d at 607, and concluded that the writing at issue was devoid of such material provisions and therefore failed to meet the statutory requirements of a holographic will. We also note the New Jersey court's reference to *In re Estate of Foxley, supra*, for its statement, "Such words constitute material provisions because they are the essence of any will." *Simonelli v. Chiarolanza*, 355 N.J. Super. at 388, 810 A.2d at 608. In summary, we agree that material provisions, meaning words which express donative and testamentary intent, are the essence of any will. Donative intent relates to words reflecting specific bequests to particular beneficiaries, and testamentary intent concerns whether the document was intended to be a will. See *Simonelli v. Chiarolanza, supra*. See, also, *In re Estate of Foxley, supra*.

The district court in the present matter, like the New Jersey court, concluded that the writing at issue failed to "contain sufficient material provisions expressing testamentary and donative intent and cannot be legally recognized as a valid holographic will." It found that the words "I Brian L Tiedeman want all my All property to Dustin Lovorn" failed to contain an operative verb to express a specific bequest and that the word "to" by itself does not have "present [or] future meaning." However, Lovorn asserts those particular words can only be understood as a specific bequest, because taken together, the words describe who the beneficiary is and what property is being devised. He concedes an "additional operative verb would have made the document more clear," but asserts "the document as a whole is sufficient to show Tiedeman's testamentary intent." Brief for appellant at 11. However, even if this court were to agree with Lovorn and find the writing was sufficient to establish donative intent, the writing still fails as a valid holographic will because of the lack of testamentary intent, which we discuss next.

- 733 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

The district court also considered the words "I here by attend to change my will" and stated that "even when read as 'intend' to change my will," the words do not "sufficiently evidence intent that the document is [Tiedeman's] final will, revoking all prior wills with the intention to dispose of his property upon his death." The court further stated, "[T]hese words express Tiedeman's intent to create a new will at a future date and not that this expression intended the creation of a final will."

[5,6] No particular words or conventional forms of expression are necessary to enable one to make an effective testamentary disposition of his or her property. *Gretchen Swanson Family Foundation, Inc. v. Johnson*, 193 Neb. 641, 228 N.W.2d 608 (1975). However, when construing the meaning of words in a document, the process requires determining the correct sense, real meaning, or proper explanation of an ambiguous term, phrase, or provision in a written instrument. See *In re Estate of Matthews*, 13 Neb. App. 812, 702 N.W.2d 821 (2005). We find no fault with the manner in which the district court examined and interpreted the words contained in the purported holographic will.

However, Lovorn argues the district court ignored the legal definition of the word "hereby" when determining whether there was present or future intent. He points to other jurisdictions' definitions, as well as the legal definition of "hereby" as either "[b]y this document" or "by these very words." Black's Law Dictionary 842 (10th ed. 2014). Lovorn argues that using one of these definitions would change Tiedeman's words in the document to "'I [by this very document] attend to change my will.'" Brief for appellant at 13. Lovorn asserts reading the words in this way requires the statement to be understood as a present intent to change his will.

Clark contends the use of the word "hereby" in the writing is inconclusive because it is not coupled with an operative verb, which prevents it from adding present intent. Brethouwer puts forth the same arguments, finding the lack of an operative

- 734 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

verb, even with the word "hereby," cannot be interpreted as present testamentary intent. Clark also contends the use of the verb "'want'" instead of "'devise,'" "'bequeath,'" or "'give'" indicates future intent and not a present intent to make a will. Brief for appellee Clark at 8.

As noted above, "hereby" means "[b]y this document," Black's Law Dictionary, *supra*, and "intend" means, in relevant part, "[t]o have in mind a fixed purpose to reach a desired objective; to have as one's purpose . . . [t]o signify or mean," *id.* at 930. The combination of the words "hereby intend" with the words "to change my will" does not clarify whether Tiedeman meant that with "this document," he was actually changing or revoking an existing will and creating a new will at that moment, or that with "this document," he was signifying his plan to change an existing will in the future. For example, the writing in question could have simply been a note written by Tiedeman to remind Timmer of his plans to later change his will, particularly since an admitted portion of Timmer's affidavit indicates Timmer told Tiedeman to schedule another appointment to discuss a new will. On the other hand, if the excluded portions of Timmer's affidavit could be considered, an argument can certainly be made that the writing was intended to evidence present testamentary intent. As set forth earlier, testamentary intent concerns whether the document was intended to be a will.

It is significant, therefore, whether the district court could have considered evidence outside the four corners of the purported will to determine testamentary intent under the circumstances present here. In construing the words within the four corners of the document, we can find no error with the district court's analysis and conclusion that the writing indicates only future intent and lacks present testamentary intent. Accordingly, we next consider whether extrinsic evidence may be considered to determine testamentary intent, because if so, a different outcome is possible.

- 735 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

*Extrinsic Evidence.*

[7,8] Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings. *In re Estate of Etmund*, 297 Neb. 455, 900 N.W.2d 536 (2017). In the present matter, the court construed the writing to indicate only Tiedeman's future intent to change his will, as discussed above. Lovorn argues the document should be construed to show present testamentary intent. Clearly, the words are ambiguous in this regard. And as noted above, Lovorn's argument is certainly more persuasive if the excluded portions of Timmer's affidavit can be considered. However, parol evidence is inadmissible to determine the intent of a testator as expressed in his or her will, unless there is a latent ambiguity therein which makes his or her intention obscure or uncertain. *In re Estate of Mousel*, 271 Neb. 628, 715 N.W.2d 490 (2006). The district court concluded that there was no latent ambiguity in the document at issue and that therefore, the extrinsic evidence contained in paragraphs 10, 12, and 13 of Timmer's affidavit could not be considered. We agree.

[9-12] A patent ambiguity is an ambiguity appearing on the face of the instrument, whereas a latent ambiguity is one outside the will. *In re Estate of Florey*, 212 Neb. 665, 325 N.W.2d 643 (1982). See, also, *In re Estate of Corrigan*, 218 Neb. 723, 358 N.W.2d 501 (1984) (patent ambiguity in will is one appearing on face of instrument as result of language contained therein). It is evident that the ambiguity at issue here is a patent ambiguity. The ambiguity arises from the writing itself, or from the face of the document. The words could indicate Tiedeman's intent to change an existing will with this particular document or his intent to change an existing will at some time in the future. A patent ambiguity must be removed by interpretation according to legal principles, and the intention of the testator must be found in the will. *In re Estate of Mousel, supra*. Patent ambiguities are "resolved from within the four corners of the will and without consideration

- 736 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

of extrinsic evidence." *In re Estate of Matthews*, 13 Neb. App. 812, 816, 702 N.W.2d 821, 825 (2005) (court rejected argument that extrinsic evidence could be considered for purpose of considering circumstances under which holographic will was made; will at issue involved patent ambiguity, not latent ambiguity). Where in a will there is such a patent ambiguity resulting from the use of the words and nothing appears within its four corners to resolve or clarify the ambiguity, the words must be given their generally accepted literal and grammatical meaning. *In re Estate of Florey, supra.* Construction includes the process of determining the correct sense, real meaning, or proper explanation of an ambiguous term, phrase, or provision in a written instrument. *In re Estate of Matthews, supra*. This is precisely what the district court did in this instance to reach its conclusion that the writing expressed "Tiedeman's intent to create a new will at a future date and not that this expression intended the creation of a final will."

[13-15] We now explain why the writing at issue does not involve a latent ambiguity, which would allow consideration of extrinsic evidence. A latent ambiguity exists when the testator's words are susceptible of more than one meaning, and the uncertainty arises not upon the words of the will as looked at themselves, but upon those words when applied to the object or subject which they describe. *In re Estate of Mousel, supra*. See *Krueger v. Krueger*, 169 Neb. 82, 98 N.W.2d 360 (1959). For example, when a will contained a devise of land to the "'Masonic Lodge for Crippled Children,'" on its face there would appear to be no ambiguity. See *In re Estate of Bernstrauch*, 210 Neb. 135, 136, 313 N.W.2d 264, 266 (1981). However, in *In re Estate of Bernstrauch*, it became evident that there was no such entity called the Masonic Lodge for Crippled Children. This resulted in two entities seeking to be designated as the proper devisee. Accordingly, the Nebraska Supreme Court concluded that a latent ambiguity existed, noting, "A latent ambiguity arises when a beneficiary is erroneously described or where no such beneficiary has ever existed

- 737 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

as the one so described" or "when two or more persons or organizations answer the description imperfectly." *Id*. at 139, 313 N.W.2d at 267. Further, "extrinsic evidence is admissible both to disclose and to remove the latent ambiguity of the will." *Id*. It is clear that a latent ambiguity is not the type of ambiguity at issue in the present appeal; the ambiguity in Tiedeman's purported will is within the face of the document itself and is therefore a patent ambiguity.

[16] In summary, a patent ambiguity is a case where the same word in a will has two meanings discernible from the face of the will itself, whereas a latent ambiguity is a case where the word has two meanings, but only when extrinsic evidence is brought to bear. *In re Estate of Smatlan*, 1 Neb. App. 295, 501 N.W.2d 718 (1992).

Clark correctly argues that any question regarding the testamentary intent of the purported holographic will is a patent ambiguity. She relies on *In re Estate of Matthews*, 13 Neb. App. 812, 702 N.W.2d 821 (2005), to assert extrinsic evidence cannot be used, and she argues the district court should have sustained her objection and kept the entirety of Timmer's affidavit out of evidence. As noted earlier, in *In re Estate of Matthews*, this court rejected an argument that extrinsic evidence could be considered for the purpose of considering the circumstances under which a holographic will was made, since the will at issue involved a patent ambiguity, not a latent ambiguity.

Both Brethouwer and Clark direct us to *In re Estate of Foxley*, 254 Neb. 204, 575 N.W.2d 150 (1998), where the court considered whether the decedent's handwriting on a photocopy of a previously executed will (and which was maintained in folder containing original will) was made with sufficient testamentary intent to constitute a proper holographic codicil. The decedent's personal representative submitted the original will and the purported holographic codicil for probate. A grandson objected to the admission of the purported codicil. Evidence was adduced that the decedent did not like

- 738 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

the grandson and that she told one of her attorneys she did not want the grandson to be an ongoing beneficiary or to participate in a previously established irrevocable trust. The trial court concluded the decedent had complied with the requirements of a holographic codicil and admitted the photocopy as a valid holograph, and this court affirmed on appeal. See *In re Estate of Foxley*, 6 Neb. App. 1, 568 N.W.2d 912 (1997). The Nebraska Supreme Court reversed, finding that the handwritten words at issue in that case, standing alone, did not evidence a clear testamentary intent. It stated:

> Although one might be sympathetic toward giving effect to the decedent's perceived testamentary intent, the Legislature has chosen to require that testamentary intent be expressed in certain ways before an instrument is entitled to be probated as a will. Unfortunately for the decedent, the instrument in this case fails. See *Matter of Estate of Muder*, 159 Ariz. 173, 765 P.2d 997 (1988). In this case, the testimony of [the decedent's] attorney and [one of] her daughter[s] . . . indicates that when [the decedent] changed the terms on the copy of her will, she was at least considering, if not actually intending, to write [her grandson] out of her will. We cannot conclude, however, that she had come to a final decision when writing on the copy of the will. We must remember that both the original and the copy of the will were found together in the den of [the decedent's] home, and an argument can be made that she was simply making notes on the copy of the will as to possible changes and had not, at the time of making those notes, made a final decision as to [her grandson]. If she was making a final decision, a plausible argument can be made that she would have made those changes on the original. If we make an exception in this case to the rule that holographic words, standing alone, have to demonstrate a clear testamentary intent, where do we stop? To weaken the rule would be to invite mischief or outright fraud by overreaching heirs, friends, or

- 739 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

other potential beneficiaries taking advantage of testators in their most vulnerable moments, such as advanced age or right after an argument with one of the children or grandchildren. If one has made a final decision to write an heir out of his or her will, this must be done in such a way that the expression of this intention complies with the statute.

*In re Estate of Foxley*, 254 Neb. at 210-11, 575 N.W.2d at 154-55.

[17,18] *In re Estate of Foxley* certainly emphasizes the importance of being true to the statutory requirements by making sure that an instrument expresses testamentary intent in certain, clear ways before being entitled to be probated as a will; further, courts should not give effect to any "perceived" testamentary intent. *Id.* at 210, 575 N.W.2d at 154. Also significant in the quote above is the point made at the end regarding decisions to write an heir out of a will. Notably, the Nebraska Supreme Court has said that "'"the law will not suffer the heir to be disinherited upon conjecture."'" *Lowry v. Murren*, 195 Neb. 42, 45, 236 N.W.2d 627, 630 (1975). Although a testator may disinherit an heir, "'"the law will execute that intention only when it is put in a clear and unambiguous shape."'" *Id.* To the extent Tiedeman intended to disinherit his sisters, the writing at issue certainly does not provide for that in clear and unambiguous terms.

Lovorn's counsel also referred to *In re Estate of Foxley*, 254 Neb. 204, 575 N.W.2d 150 (1998), during oral argument as an example of a Nebraska case where extrinsic evidence was used to interpret the testamentary intent behind a document, because in its analysis, the Nebraska Supreme Court mentioned the location where the purported codicil and the original will were found. However, *In re Estate of Foxley* does not support Lovorn's position. The Nebraska Supreme Court was clear that the handwritten words on the photocopy of the will, standing alone, could not be understood to have testamentary intent without referring to the typewritten words

- 740 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

of the original will (extrinsic evidence) and that therefore, the purported holographic codicil was invalid. In that case, there may have been a different outcome that would have given effect to the decedent's perceived testamentary intent if the extrinsic evidence could have been considered. The same can be said here. However, the Nebraska Supreme Court was clear in *In re Estate of Foxley* that testamentary intent had to be discerned from the handwritten words alone. That is precisely what the district court did in this case.

Lovorn also asserts the district court should have admitted Timmer's entire affidavit based on *In re Estate of Dimmitt*, 141 Neb. 413, 3 N.W.2d 752 (1942). Lovorn reads *In re Estate of Dimmitt* to allow extrinsic evidence to be considered to "'show the facts and circumstances surrounding the situation under which Tiedeman created the will.'" Brief for appellant at 15, quoting *In re Estate of Dimmitt, supra*. However, Lovorn's reliance on *In re Estate of Dimmitt* is misplaced. The dispute in *In re Estate of Dimmitt* was over an attempt to admit both a will and a deed into probate together in order to convey a tract of the decedent's land. *In re Estate of Dimmitt* has been found to be distinguishable from cases where the will purports to be complete on its face and makes no reference to any extrinsic document. See *In re Estate of Matthews*, 13 Neb. App. 812, 702 N.W.2d 821 (2005). We likewise find *In re Estate of Dimmitt* inapplicable here, because there is no attempt in this case to incorporate an extrinsic document into the will like the deed in *In re Estate of Dimmitt*.

In summary, we agree with the district court's decision that the purported holographic will could not be legally recognized as a valid holographic will. The court correctly determined that the document did not contain sufficient material provisions expressing testamentary and donative intent within the document itself and that extrinsic evidence could not be considered to aid in that determination since there was no latent ambiguity.

- 741 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE ESTATE OF TIEDEMAN
Cite as 25 Neb. App. 722

*Supersedeas Bond.*

Lovorn assigned as error that the supersedes bond amount of $400,000 set by the district court was both an excessive amount and in excess of 50 percent of his net worth, which he argues is contrary to Neb. Rev. Stat. § 25-1916 (Reissue 2016). However, after considering the motions for summary disposition on this issue, we reduced the supersedeas bond amount to $100,000, which Lovorn posted, making his assignment of error, and Clark's cross-appeal on this issue, moot before this court.

*Remaining Assigned Errors.*

On cross-appeal, Brethouwer and Clark both assign as error the district court's admission of Timmer's affidavit, other than paragraphs 10, 12, and 13. Clark also assigns as a separate error the district court's finding that the writing in question was in Tiedeman's handwriting. However, an appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Streck, Inc. v. Ryan Family*, 297 Neb. 773, 901 N.W.2d 284 (2017). Having already found the document in question is not a valid holographic will, we need not decide these remaining assigned errors.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order.

Affirmed.